Samuel D. McCullough and Hazel McCullough, Plaintiffs (Samuel D. McCullough, Appellee), v. Howard Orcutt, Defendant-Appellant.

Gen. No. 10,964.

Second District.

September 19, 1957.

Released for publication October 7, 1957.

Pallissard, Fleming & Oram, of Watseka, and Hurshal C. Tummelson, and Oris Barth, both of Urbana, for appellant.

Bell & Smith, of Watseka, for appellee.

PER CURIAM.

On August 18, 1953, the instant complaint, consisting of two counts, was filed in the circuit court of Iroquois county. Subsequently and on April 17, 1954, an amended complaint was filed. In count one of the amended complaint Samuel D. McCullough sought to recover from defendant, Howard Orcutt, damages for personal injuries received by him and for other expenses alleged to have been incurred by him as a result of an automobile accident which occurred on August 21, 1951. This count alleged that plaintiff was a guest passenger in a car then being driven by the defendant, Orcutt, in a westerly direction on U. S. Highway No. 24; that the Orcutt car came into collision at the interesction of U. S. Highway No. 24 and Illinois State Highway No. 49 with a motor truck owned by the Eastern Illinois Clay Company and then operated by its employee and servant, James J. Wilson, now deceased, in a southerly direction on said Illinois State Highway No. 49.

The second count of the amended complaint was on behalf of Hazel McCullough, who was the wife of Samuel D. McCullough. She was not an occupant of either vehicle involved in, or was she present at, the collision, but her cause of action was predicated upon the alleged fact that she suffered a miscarriage after the accident, caused by the shock she sustained as a result of the injuries to her husband.

515

The defendant on October 9, 1954, filed his answer but no further steps were taken in the case until November 15, 1955, at which time the defendant filed his motion for leave to file a supplemental answer, a copy of the proposed supplemental answer accompanied said motion for leave to file. The trial court denied leave to file and the issues made by the amended complaint and answer were submitted to a jury resulting in a verdict, as to count one, in favor of the plaintiff, Samuel D. McCullough, for $12,500. As to the second count, the jury returned a verdict finding the defendant not guilty. After overruling all post-trial motions, judgments were rendered on the verdicts and the record is before us for review upon the appeal of the defendant, Howard Orcutt. The plaintiff in the second count, Hazel McCullough, has not appealed.

In count one of the amended complaint, the wilful and wanton misconduct charged against the defendant was (a) failure to stop and await traffic already in the intersection; (b) failure to allow the motor vehicle already in the intersection to pass out of the same before he entered it; (c) failure to keep a proper lookout; (d) driving at an unreasonable and excessive speed; (e) operating the motor vehicle with defective brakes; and (f), driving his car into the intersection when it was not clear of traffic.

In this count plaintiff charged that one or more of the aforesaid acts or omissions resulted in injuries to himself and that these alleged wilful and wanton acts caused his wife to suffer shock, strain and anxiety, and to become seized with nervous disorders, physical illness, premature labor pains, and, being pregnant, to miscarry and deliver a stillborn child. Plaintiff then alleged that by reason of the shock, strain, anxiety, nervous disorders, physical illness and miscarriage of his wife, he was required to expend large sums of money for doctor bills, hospital bills, nursing care and

attention for his wife, and for funeral expenses and for the purchase of a burial lot for his stillborn child. The prayer of this count was for damages in the amount of $10,000, which, after the verdict brought in by the jury in the amount of $12,500, was amended, by leave of court, for the amount of the verdict as returned by the jury.

Counsel for appellant insists (1) that the evidence shows, as a matter of law, that the defendant was not guilty of any wilful and wanton misconduct and therefore the trial court erred in denying defendant's motion for an instructed verdict; (2) that the trial court erred in allowing the plaintiff to introduce incompetent and prejudicial evidence relative to the injuries alleged to have been sustained by his wife and the expenses which the plaintiff was required to pay for her hospital and doctor bills and for the funeral expenses and burial lot for the stillborn child; (3) that a covenant to terminate certain litigation against the administrator of the estate of the said James J. Wilson and his employer, Eastern Illinois Clay Company, was a general release, and not only released Wilson's estate and his employer but also the defendant as a joint tort-feasor.

Counsel for appellee insists that the evidence discloses a factual situation which presented a question for the jury to decide whether appellant was or was not guilty of wilful and wanton misconduct; that the verdict of the jury finding the defendant not guilty as to the claim of Hazel McCullough obviated any error committed by the court in the admission of incompetent and prejudicial evidence, and, finally, that the instrument designated as a covenant to terminate litigation was not a general release but amounted only to a covenant not to sue.

■■ It is well established that on a motion for a directed verdict or for a judgment notwithstanding the

■■■■■■■■■■■■
■■■■■■■

verdict, the court does not weigh the evidence. It may properly consider only the evidence and the inferences to be drawn therefrom which are most favorable to the plaintiff, and it is only when there is no evidence tending to prove the plaintiff's case that the court can grant either a motion for a directed verdict or for a judgment notwithstanding the verdict. (Lindroth v. Walgreen Co., 407 Ill. 121, 130; Green, Admr. v. Keenan, 10 Ill.App.2d 53, 59.) In order to determine whether under this rule the court was required to submit the issues in this case to the jury, it is necessary to review the evidence found in this record.

U. S. Highway 24 is a paved highway running in an easterly and westerly direction. Illinois Route 49 is also a paved highway and runs north and south. Route 24 is a preferential highway and there are no stop signs on it for traffic going east and west, but there are stop signs on Route 49 for traffic going north and south. At about nine o'clock on the morning of August 21, 1951, appellant was driving his car in a westerly direction on Route 24 accompanied by appellee and two other guest passengers, Ralph Knight and Harold Gossett. Appellee was riding in the front seat with appellant who was driving the car and the other two guests were riding in the rear seat. Hazel McCullough, wife of appellee and plaintiff in count two of the amended complaint was not present in the car but was at her home in Watseka. Appellant entered Route 24 at a point about 1,000 feet east of the intersection where the accident occurred and for two blocks or more in each direction from the intersection, there were filling stations, restaurants and other small business establishments on both sides of Highway 24.

The intersection of these highways is located just west of the corporate limits of Crescent City, a village having a population between three and four hundred

inhabitants. The motor truck driven by James J. Wilson was loaded with tile.

The evidence tends to prove that Mr. Wilson, the driver of the motor truck, stopped at the stop sign on the north side of Route 24 and then, after looking in both directions, proceeded south across Route 24. Appellant first saw the truck when one of his guests, Harold Gossett, yelled, "Lookout! there's a truck." At this time appellant was between 140 and 160 feet from the intersection and traveling at an approximate speed of 60 miles an hour, according to the testimony of two filling station attendants who saw his car approaching the intersection. Appellant and his passengers, Knight and Gossett, testified he was going about 35 to 40 miles an hour and appellant testified that he first saw the truck when Gossett shouted his warning; that he immediately applied his brakes and skid marks were observed on the pavement for approximately 75 feet. His car struck the truck about in the middle of the intersection. It was a clear, bright day, the pavement was dry and the view in the direction he was traveling was clear and unobstructed and he was familiar with the intersection, as he had lived in that community for several years and had driven on Route 24 on numerous occasions. A traffic survey made prior to the accident at this intersection showed a traffic count of 275 vehicles per hour passing through the intersection on a daytime setup. This would amount to one car using the intersection approximately every thirteen seconds.

We are asked to hold, as a matter of law, that the foregoing evidence shows the defendant was not guilty of wilful and wanton misconduct. Myers v. Krajefska, 8 Ill.2d 322, was an action by a wife as administrator of the estate of her deceased husband against the driver of the automobile in which her husband was riding as a guest passenger. The cause was tried by

the court without a jury and in sustaining a judgment for the plaintiff the court said that where the trial court has heard the testimony and observed the witnesses the judgment should not be disturbed unless it is manifestly against the weight of the evidence. The court then called attention to the fact that our guest statute employs the term "wilful and wanton misconduct," and, after stating that it had examined the various cases cited by defendant from this and other jurisdictions, then said (pp. 328–329): "While it is to be noted that in many instances different wording, language and terminology is employed by the different courts in various instances, the basic general concept of the term as applied to the facts in the particular cases has remained essentially the same. The basic element in all of these cases indicates that liability can be founded under such a cause of action where the act was done with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved. The knowledge concerning other persons can be actual or constructive. As indicated by the decisions of other states which do not employ this term, it is generally considered in that area of fault between ordinary negligence and actual malice. In view of the fact that it is a matter of degree a hard and thin line definition should not be attempted. As stated in Mower v. Williams, 402 Ill. 486, 'as to whether or not there has been wilful and wanton conduct in any given case necessitates close scrutiny of the facts as disclosed by the evidence, and while the rule of law does not vary, the facts to which the law is applicable always present divergent circumstances and facts which, in most instances, are wholly dissimilar.' "

Counsel for appellant argues that appellee's case was based solely upon speed and that speed alone cannot be the basis for wilful and wanton misconduct.

However, as we view the evidence, speed is not the only circumstance to be taken into consideration in determining whether or not defendant, in the instant case, was guilty of wilful and wanton misconduct. In addition to speed, there is also the defendant's failure to keep a proper lookout, as he testified he did not see the truck entering the intersection until he was within 140 to 160 feet of the intersection and then not until his attention was called to it by one of his guest passengers. The evidence fails to reveal any reason why he should not have seen the truck when he was much farther from the intersection. There is also the factor that this intersection was heavily traveled, that it was in a built-up section of the highway and that defendant was familiar with its location and the surrounding territory.

Signa v. Alluri, 351 Ill. App. 11, was a guest passenger case and in the course of the opinion the court said (p. 17) : "It would appear that the true rule in this state is that speed is a circumstance which may be taken into consideration bearing upon the presence of wilful and wanton conduct, and in a given case might of itself establish wilful and wanton conduct, taking into consideration the degree of speed with reference to all other surrounding circumstances." The court then went on to say that the evidence of the failure of the defendant to look to the north prior to the accident, coupled with the speed with which he drove into the intersection, raised a question of fact for the jury. (See also Ashby v. Irish, 2 Ill.App.2d 9.)

■ In view of the principles announced in the foregoing cases and in the recent case of Amenda v. Suits, 8 Ill.2d 598, the issue whether appellant was or was not guilty of wilful and wanton misconduct was a question of fact and the trial court committed no error in overruling defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

As the case must be retried we express no opinion on the question as to whether the jury's verdict is contrary to the manifest weight of the evidence.

Under paragraphs 6, 7 and 8 of count one of the amended complaint, appellee sought to recover for the expenditures which he made for doctor bills, hospital bills, nursing care for his wife and for funeral expense and the cost of the burial lot for the premature-born baby. He alleged that his wife was pregnant and that as a result of the injuries which he sustained in the collision in question his wife suffered shock, strain and anxiety, and became so emotionally upset that she miscarried and gave birth to a stillborn child.

■ Over the objection of counsel for appellant, appellee testified as to the sums which he paid for the various items heretofore mentioned, and introduced into evidence, over the objection of appellant, receipted statements for these expenses, which totaled a substantial sum. It was error for the court to admit this testimony relative to such matters and the admission of such incompetent evidence necessitates the reversal of this judgment.

In Phillips v. Dickerson, 85 Ill. 11, the court held that there could be no recovery by a woman for a miscarriage or for an emotional disturbance suffered by her when no physical contact with the defendant was involved, on the theory that such damages were too remote and that they could not be said to be the natural and proximate consequence of the defendant's conduct. In Braun v. Craven, 175 Ill. 401, the court held that there must be a contemporaneous physical injury along with the fright and emotional disturbance in order for liability to attach for such fright or emotional disturbance.

The plaintiffs in both the Phillips and Braun cases, supra, were denied a recovery because the court held that liability could not be predicated on fright, terror,

emotional shock, distress or anxiety, unaccompanied by a physical injury sustained at the same time. In the instant case, the plaintiff is the husband of the party who suffered these distresses and he seeks, as elements of the damage he sustained, to recover the several sums he expended for hospital and doctor bills, nursing expense for his wife, funeral expense for his stillborn child and the cost of a burial lot. In Braun v. Craven, 175 Ill. 401, at page 409 of the opinion, the Supreme Court cited and quoted, with approval, from Renner v. Canfield, 36 Minn. 90. It appeared in the Minnesota case that the defendant and a companion were driving a wagon along a highway in front of the plaintiff's premises when a dog belonging to the plaintiff's father attacked the dog belonging to defendant's companion. The defendant sprang from the wagon with his gun and fired at the dog and killed the dog as it fled toward the plaintiff's premises. Plaintiff's wife was standing at the pump near the house and saw what transpired. She was startled and frightened and supposed the defendant was aiming his gun towards her and she suffered a miscarriage. The husband, in that action, sought to recover from the defendant the damages resulting therefrom, but was denied a recovery, the Minnesota court holding that the killing of the dog was in no sense the proximate cause of the injury to plaintiff's wife.

It is finally insisted by counsel for appellant that the trial court erred in denying defendant leave to file his proposed supplemental answer. This supplemental answer averred that the plaintiffs, Samuel D. McCullough and Hazel McCullough, had, on July 1, 1952, as plaintiffs, filed in the circuit court of Iroquois county another suit against the estate of James J. Wilson, deceased, Pauline Wilson, administrator thereof, and Eastern Illinois Clay Company, a corporation, and attached a copy thereof to the proposed supple-

mental answer. This proposed supplemental answer then averred that the other suit involved the same occurrences as are set out in the present suit and that on October 26, 1954, which was after the defendant's original answer in the instant case was filed, the plaintiffs in the other suit made, executed and delivered a certain instrument in writing, which, omitting the certificate of acknowledgment, is as follows, viz.:

"State of Illinois ⎱ ss.
Iroquois County ⎰ In the Circuit Court

"Samuel D. McCullough and
 Hazel McCullough,
 Plaintiffs,

vs.

"The Estate of James J. Wilson, Law No. 28471
 Deceased, Pauline Wilson,
 Administrator, etc., and
 Eastern Illinois Clay Company
 of St. Anne, Illinois, A
 Corporation,
 Defendants.

## "COVENANT TO TERMINATE LITIGATION

"Whereas, the above captioned Case was instituted by the Plaintiffs for recovery of personal injuries sustained by Samuel D. McCullough and for incidental damages alleged to have resulted therefrom, and Whereas the said Plaintiffs have been paid the sum of Seventeen Hundred ($1700.00) Dollars, receipt whereof is hereby acknowledged, to terminate the said cause above captioned, for and in consideration of said payment, Samuel D. McCullough and Hazel McCullough, his wife, each in his or her own right, and as spouse of the other, hereby covenant and agree to cause an

524

Order to be entered in the above captioned cause dismissing the said cause at the cost of the Plaintiffs and at the prejudice of the Plaintiffs as soon as disposition of other pending litigation growing out of the same facts and circumstances has been tried and disposed.

"Dated this 26th day of October A.D. 1954.

"/S/ Samuel McCullough (Seal)
"/S/ Hazel McCullough (Seal)"

The complaint in the suit of Samuel D. McCullough v. The Estate of James J. Wilson, Deceased, which was made a part of the proposed supplemental answer alleged that on August 21, 1951, James J. Wilson was operating a motor vehicle southerly on Illinois State Highway No. 49, approaching the intersection thereof with U. S. Highway No. 24 immediately west of Crescent City, Iroquois county; that the plaintiff, Samuel D. McCullough, at the time and place was riding as a passenger in an automobile operated by Howard Orcutt westerly on U. S. Highway No. 24, approaching that intersection; that Samuel McCullough was a guest in the Orcutt automobile and was exercising due care for his own safety; that James J. Wilson was then the agent of Eastern Illinois Clay Company, a corporation; that U. S. Highway No. 24 was a preferential highway, stop signs having been placed on Illinois Highway No. 49 directing traffic to stop before entering the intersection; that it was the duty of James J. Wilson to so operate the said motor truck as not to injure others lawfully using the highway, to stop before entering the intersection and to wait until he could enter it with safety and without injuring persons lawfully using U. S. Highway No. 24; that James J. Wilson did one or more of certain alleged negligent acts, thereby causing the injuries of the plaintiff, Samuel D. McCullough, and because of the alleged negligent conduct of James J. Wilson the truck driven by him was driven in front of the automobile of Howard

525

Orcutt, thereby causing a collision, and as a direct and proximate result of the alleged negligent conduct of James J. Wilson while operating the truck as the agent of the Eastern Illinois Clay Company, the plaintiff, Samuel D. McCullough, was injured.

It was the contention of appellant in the trial court and it is his contention in this court that James J. Wilson, the driver of the truck proceeding southerly on Illinois State Highway No. 49, and his employer, Eastern Illinois Clay Company of St. Anne, a corporation, were tort-feasors; that appellant Orcutt is also a tort-feasor and that the acts of all three tort-feasors contributed to cause McCullough's injuries; that the covenant executed by appellant and his wife released not only the tort-feasors, James J. Wilson and the Eastern Illinois Clay Company, but must be held as a matter of law to have released the defendant in the instant suit, Howard Orcutt, and operates as a bar to the prosecution of the instant action. In denying leave to file said proposed supplemental answer the trial court held otherwise and we agree.

In the recent case of Hulke v. International Mfg. Co., 14 Ill.App.2d 5, this court reviewed rather extensively the cases involving a general release and a covenant not to sue. In that case, we said (p. 24): "Illinois recognizes a distinction between a release, or an accord and satisfaction, and a covenant not to sue. A release, or an accord and satisfaction, generally extinguishes or discharges the cause of action, while a covenant not to sue does not affect the cause of action but only the right to sue thereon. A release, or an accord and satisfaction, are generally considered a bar to further action while a covenant not to sue is not so considered. A release of, or an accord and satisfaction with, one joint tort-feasor is generally considered a discharge of all joint tort-feasors, while a covenant not to sue is not so considered. Whether or not a docu-

526

ment is construed as a release, an accord and satisfaction, or a covenant not to sue depends upon the words used, the amount paid, the substance of the agreement and the intention of the parties. The underlying principle in construing whether or not a document is or is not a release, an accord and satisfaction, or a covenant not to sue is the basic one that a person is entitled to only one full compensation for his injuries."

■ In the instrument under consideration in the Hulke case, which the court held to be a convenant not to sue and not a release, the words "release," "discharge," "full settlement" or "satisfaction" did not appear therein except where it was stated it was not intended as a release or discharge or as an accord or satisfaction. The same is true of the instrument here, which the defendant urges is a general release. The legal effect of an instrument such as is here involved must be construed so as to carry out the intention of the parties and this intention is to be sought in the language of the instrument when read in the light of the circumstances surrounding the transaction, and the court which interprets the instrument must place itself as nearly as possible in the position of the parties when they drafted and executed the document. (Hulke v. International Mfg. Co., 14 Ill.App.2d 5, 31; Esser v. Community Consol. School Dist., 335 Ill. App. 199.)

In the instant case the instrument is designated "Covenant to Terminate Litigation." Since the suit had already been commenced, this was undoubtedly the reason it was so designated, rather than a "Covenant Not to Sue." The instrument recites that it is conditioned upon the disposition of other pending litigation growing out of the same facts and circumstances that caused it to be given. In other words, its legal effect was to be held in abeyance pending the disposition of other litigation arising out of the same accident. The amount paid, $1,700, when considered

527

in connection with the serious injuries sustained by the plaintiff, as shown by this record, certainly does not indicate full and adequate compensation to him.

The recitals in this instrument tend to repel a presumption of satisfaction in full. It is clear from a reading of this instrument and a study of the facts and circumstances surrounding its execution that it was not the intention of the parties that it should operate as a general release, but rather that the litigation pending against the administrator of the estate of James J. Wilson and his employer would be disposed of when the instant suit was concluded. This instrument is just what it says it is, a covenant to end litigation.

In New York, C. & St. L. R. Co. v. American Transit Lines, 408 Ill. 336, it appeared that a tractor truck with trailer attached ran into a freight train of the plaintiff railroad company where the tracks of that company cross Illinois State Highway No. 48 near the corporate limits of Gibson City. As a result of the collision, twenty freight cars were derailed, the track and roadbed of the railroad company were torn up and a considerable amount of freight contained in the cars was lost or destroyed. The railroad company brought suit to recover the damages it sustained and a jury returned a verdict for the plaintiff for $17,800. The plaintiff was not satisfied with the amount of the verdict and filed its motion for judgment notwithstanding the verdict for $51,242.22 and also an alternative motion for a new trial. These motions were denied. The defendant filed a counter-motion asking the court to reduce the verdict by crediting therein the sum of $2,000 which plaintiff had received from two other defendants, to whom it had given a covenant not to sue. This motion was allowed and judgment entered

for $15,800 and the plaintiff appealed. It was insisted by appellant that the trial court erred in reducing the verdict by crediting thereon the $2,000 which appellant had received in consideration of a covenant not to sue from two other defendants who were dismissed from the suit before trial. In refusing to sustain this contention of the plaintiff the court cited Garvey v. Chicago Ry. Co., 339 Ill. 276, and McManaman v. Johns-Manville Products Corp., 400 Ill. 423, and said that where an injury has been received by the negligence or wilfulness of two or more joint tort-feasors and suit is brought against one or more of them to recover damages, any amounts received by plaintiff for execution of a covenant not to sue some one or more of the joint tort-feasors are to be applied in reduction of damages recoverable from those remaining in the suit. The court then said (p. 342): "The latest pronouncement upon the subject is the well reasoned case of Aldridge v. Morris, 337 Ill. App. 369, wherein the two last mentioned cases were followed and which case we very carefully considered on petition for leave to appeal and, after such consideration, denied it. We are of the opinion that the circuit and appellate courts properly applied the rule in this case."

In Aldridge v. Morris, 337 Ill. App. 369, this court said (p. 380): "This court holds that where plaintiff receives a payment for a covenant not to sue from one against whom tort liability could lie, such payment, made before or after judgment, may be deducted from the damages recoverable from persons whose tort liability arises out of the same circumstances, irrespective of whether the covenantee is made a party to the suit. Moreover, it should be proper to submit not only evidence of such payment, but instructions informing the jury of their right to consider such a payment in arriving at their verdict."

529

In De Lude v. Rimek, 351 Ill. App. 466, the court held that the matter of payment to the plaintiff by one or more joint tort-feasors in consideration of a covenant not to sue was a matter to be presented to the court after the trial of the cause and a verdict had been returned and this was approved in Bloom v. Yellow Cab Co., 2 Ill.App.2d 224.

 In the instant case it was insisted by appellant in the trial court that the instrument here involved was a release. The trial court held it was not and, in our opinion, did not err in this regard. For admitting incompetent evidence, as herein pointed out, the judgment appealed from is reversed and the cause remanded to the circuit court of Iroquois county for a new trial.

Reversed and remanded.

CROW, J., concurs in the decision reached but not in all that is said therein with reference to the "covenant to terminate litigation."