Grover LAND, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 5816.

United States District Court
N. D. Oklahoma.

July 17, 1964.

Jack I. Gaither, Tulsa, Okl., for plaintiff.

John M. Imel, U. S. Atty., and Hugh V. Schaefer, Asst. U. S. Atty., Northern Dist. of Oklahoma, Tulsa, Okl., for defendant.

BARROW, Chief Judge.

Plaintiff brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 1346. He seeks damages for personal injuries incurred by him when the automobile in which he was riding, as a passenger, was involved in a collision with an automobile driven by James L. Neal, an employee of the government.

Before filing this action, the plaintiff had filed suit in the Superior Court of Creek County against James L. Neal and Don Blagg, d/b/a Blagg Wrecking Service, for damages for his personal injuries resulting from this accident. Also previous to the filing of this action, the plaintiff entered into a "Covenant not to

Execute" with James L. Neal and his automobile liability insurance carrier, and the Creek County action was dismissed without prejudice as to Mr. James L. Neal only.[1]

The United States has filed its answer herein admitting that Neal was its agent and employee acting within the scope of his employment at the time of the accident. One of the defenses alleged in the answer is that the release of its servant Neal operates to release the government as well.

The United States has moved for summary judgment in its favor based on the pleadings, answers to interrogatories and admissions on file. The government contends that under Oklahoma law a release of an agent operates to release the principal even though an attempt is made to reserve a right of action against him.

■ 28 U.S.C.A. § 1346 waives the statutory immunity of the United States from being sued for tort, "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." This accident occurred on a highway of the State of Oklahoma. In adopting the above language, Congress intended to make the law of the state controlling not only as to the creation of liability, but also as to a release from liability.[2]

The question for determination, therefore, is the effect under the law of Oklahoma of the covenant not to execute which was executed by the plaintiff in favor of the government employee.

■ The complaint in this action does not allege any independent or concurring act of negligence of the United States, and the only negligence alleged therein is the negligence of the employee, Neal. The Oklahoma courts recognize a distinction between the liability of ordinary joint tort feasors and instances where the claimed liability is based on a principal-agent relationship. The rule applied is that, where an employer was guilty of no independent acts of negligence, and would only be secondarily liable under the principle of respondeat superior, a release and covenant not to sue executed in favor of the employee releases the employer as well, despite an attempted reservation of rights against such employer.[3]

■ In cases involving ordinary joint tort feasors, each guilty of independent and concurring negligence, intent is the controlling factor in determining whether

1. This covenant not to execute is as follows:

"KNOW ALL MEN BY THESE PRESENTS THAT for and in consideration of the sum of $5,275.00, in hand paid, receipt of which is hereby acknowledged, we do hereby agree and covenant not to levy or issue out an execution or garnishment at any time against James L. Neal and/or United States Fidelity & Guaranty Company or to attach any of the property or assets of either of them by reason of any claim which we have or might have as a result of injuries or damages arising out of an automobile collision on February 8, 1963.

"The undersigned hereby further covenant and agree that they will indemnify and hold harmless the said James L. Neal and United States Fidelity & Guaranty Company against any and all liability resulting from said accident.

"This covenant not to execute is executed by us, not in satisfaction of any damages sustained nor as compensation for injuries, nor in settlement of any claim for damages. Said money is paid and accepted as the consideration for the Covenant not to Execute.

"The undersigned hereby expressly reserve all rights of action, claims, and demands against the United States Government and Blagg Wrecking Service and any and all other persons except James L. Neal and United States Fidelity & Guaranty Company."

2. Rushford v. United States, 2 Cir., 204 F.2d 831; Matland v. United States, 3 Cir., 285 F.2d 752.

3. Barsh v. Mullins, Okl., 338 P.2d 845; Mid-Continent Pipeline Co. v. Crauthers, Okl., 267 P.2d 568; Hammond v. Kansas, O. & G. Ry. Co., 109 Okl. 72, 234 P. 731.

an instrument is a release or a covenant not to sue.[4] However, where the basis of liability is derivative in nature, the intent of the person executing the release is not the primary consideration.[5]

No Oklahoma decisions have been found construing covenants not to execute. It would appear, however, that a covenant not to execute is similar to a covenant not to sue in that, like a covenant not to sue, it also is exchanged for settlement of damages for personal injuries between parties involved. The only apparent distinction between a covenant not to execute and a covenant not to sue, is that the former is given when settlement is effected after filing of a suit, while the latter is given when settlement is effected before a suit is filed. As said in Pellett v. Sonotone Corporation, 26 Cal.2d 705, 160 P.2d 783, 160 A.L.R. 863, a covenant not to execute is closely akin to a covenant not to sue and its legal effect should be held to be similar.

The Plaintiff urges that the covenant not to execute does not purport to release the government's agent nor does it acknowledge payment for injuries. It is true that the instrument given to Neal artfully refrains from using the word "release". It provides, instead, that the consideration is accepted as consideration for the covenant not to execute and not in satisfaction of compensation for injuries nor in settlement of any claim for damages. But the end result is to release Neal from any further liability for the accident and, upon execution thereof, the action against him was dismissed. As said in Bacon v. United States, 8 Cir., 321 F. 2d 880, the mere fact that an instrument is called a "covenant not to sue" does not prevent the parties from entering into an agreement which releases a tort feasor. The court further held in that case that the covenant not to sue released the employee, and that a full and complete release of the servant releases the master.

The Court of Appeals of the Tenth Circuit in United States v. First Sec. Bank of Utah, 208 F.2d 424, 42 A.L.R. 2d 951, had for decision the same question presented here. The court held that the suit under the Tort Claims Act was not barred by the plaintiff's prior settlement and release of the agent of the government. However, that case is not determinative of the instant case because the Court applied the law of Utah, as it was bound to do under 28 U.S.C.A. § 1346. The Court held that the law of joint tort feasors relating to releases and covenants not to sue is applicable to respondeat superior situations in Utah. The Oklahoma cases of Mid-Continent Pipeline Co. v. Crauthers and Barsh v. Mullins, supra, expressly recognize that a different result obtains when a master-servant relationship exists between parties than when they are joint tort feasors.

The distinction between the First Sec. Bank of Utah case and the instant case is clearly demonstrated in the case of Bacon v. United States, supra. A motion for summary judgment was presented to the Missouri district court based on the same issue that is raised by the government's motion for summary judgment herein. The case is similar to the case under consideration in that the plaintiffs were involved in an automobile accident with an agent of the United States government and, prior to the filing of suit against the United States under the Tort Claims Act, a suit had been filed against the government agent, and dismissed after a covenant not to sue was entered into with the agent. The Missouri district court upheld the government's motion for summary judgment on the ground that the covenant not to sue precluded recovery against the agent's employer, despite the attempted reservation of rights.[6] Attention is directed to the fact that no-

4. Western Spring Service Co. v. Andrew, 10 Cir., 229 F.2d 413.

5. Barsh v. Mullins, supra.

6. Bacon v. United States, D.C., 209 F. Supp. 811.

where in the covenant not to sue is the word "release" used in connection with the claim against the government's agent in this Missouri case. The Court of Appeals in affirming the lower court, said:

" * * * The United States and Drouse are not joint tort-feasors; we are confronted with a case where the appellee, United States, can only be liable, if it is liable at all, under the theory of respondeat superior which is not the same as a joint tort-feasor situation. Max v. Spaeth, 349 S.W.2d 1 (Mo.1961). * * *

"A reading of the Max case can leave no doubt that under the Missouri law: 'A valid release of a servant from liability for tort operates to release the master.' It would seem, then, that a covenant not to sue which released the servant would therefore operate to release the master under the authority of Max v. Spaeth, supra. * * *

"Under the Missouri law this covenant not to sue must be considered a release for the purposes of this discussion since it in fact relieved the appellee's employee from liability to the appellants, and the absolution of an employee through operation of law releases the employer even though appellants attempted to avoid the release of the employer by language contained in the covenant not to sue. Max v. Spaeth, supra; see also Annot., 20 ALR2d 1044 (1951), which sets out the two conflicting rules.

"As the Missouri Supreme Court said in Max, the master's liability under the doctrine of respondeat superior is based not on his own misdeeds but those of his servant, and 'therefore, when the servant is not liable, the master for whom he was acting at the time should not be liable.' It matters little how the servant was released from liability; as long as he is free from harm, it appears to us that his master should also be held blameless."

The opinion then discusses other cases, including the Utah Bank case, and concludes:

"We do not feel that these cases are in conflict with our holding for we are bound by the law of Missouri. * * *"

Since, under the law of Oklahoma, a private person would not be liable under the circumstances here, the United States is not liable. The motion for summary judgment is therefore sustained.