VICTOR F. WHITTLESEA, DBA WHITTLESEA CHECKER TAXI, AND ORVILLE RAY FRY, APPELLANTS, v. WALTER CLAUDE FARMER, RESPONDENT.

No. 5997

May 8, 1970                                    469 P.2d 57

*Alex. A. Garroway,* of Reno, for Appellants.

*Springer & Newton,* of Reno, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

The central issue presented by this appeal is whether a covenant not to execute falls within the provisions of the Uniform Obligations Act. We hold that it does not.

Farmer commenced an action against Whittlesea, his employee Fry, the Nevada Bank of Commerce and its employee

Lamb to recover damages for personal injuries incurred while riding as a passenger in a Whittlesea taxi driven by Fry which collided with a car driven by Lamb. Fry and Lamb were charged jointly and severally as tortfeasors. The liability of their respective employers was premised on the doctrine of respondeat superior. Before trial, the defendant Lamb and the Bank paid Farmer $10,000 in consideration for his agreement not to execute upon any judgment obtained in the pending action against them. The covenant not to execute did not contain an express reservation of rights to proceed against Fry and Whittlesea. The jury returned its verdict for $13,000 against all defendants and credited against that award the $10,000 paid by Lamb and the Bank, leaving a balance of $3,000 to be paid. Judgment was entered accordingly. Since Farmer cannot, by reason of his covenant with Lamb and the Bank, recover the unpaid balance from them, he has looked to the codefendants Fry and Whittlesea for payment thereof. The latter have appealed to this court contending that the Uniform Joint Obligations Act embraces a covenant not to execute and that the failure of Farmer to expressly reserve his rights to proceed against them automatically released them from liability. The contention is unsound.

1.   The Uniform Joint Obligations Act includes tort actions (NRS 101.010) wherein it is claimed that the defendants are jointly and severally liable (NRS 101.050) to the plaintiff.[1] A release or discharge of one of the defendants without an express reservation of rights against the others discharges the others to the extent provided in NRS 101.060. Of course, such a release or discharge may expressly reserve the rights of the claimants against the others claimed to be jointly and severally liable to him.

The apparent purpose of the act is to modify the common law doctrine that a release of one joint tortfeasor releases all—this, because but one cause of action existed against them which was surrendered when the release was executed.

The Act would apply to the case at hand if a covenant not to execute upon a judgment is the same as a release. However,

---

[1]In Hansen v. Collett, 79 Nev. 159, 380 P.2d 301 (1963), a tort case, the Uniform Joint Obligations Act did not apply because the case concerned separate acts of successive tortfeasors rather than the concurrent acts of joint tortfeasors.

it is not the same as a release. The legal effect of a covenant not to execute is similar to a covenant not to sue; the essential distinction between them being that the former is entered into after suit is commenced and before judgment, whereas the latter is made before suit is commenced. Land v. United States, 231 F.Supp. 883 (D.C. Okla. 1964). Neither covenant extinguishes the plaintiff's cause of action, as does a release. The covenants are agreements not to enforce an existing cause of action (covenant not to sue) or to execute upon a judgment (covenant not to execute). Pellett v. Sonotone Corporation, 160 P.2d 783 (Cal. 1945). Such a covenant does not release joint tortfeasors even in the absence of any reservation of rights against them. Prosser on Torts, 3d ed, p. 271. In the event of a breach of covenant the remedy is in contract for that breach. Pellett v. Sonotone Corporation, supra. The Uniform Joint Obligations Act contemplates a document which extinguishes the plaintiff's claim and does not embrace a covenant not to sue or not to execute, and we so rule. Since the plaintiff may have but one satisfaction for his injuries from joint tortfeasors, the amount paid for a covenant by one of them reduces by that amount the liability of the others. Pacific States Lumber Co. v. Bargar, 10 F.2d 335 (9 Cir. 1926). Accordingly, the defendants-appellants Whittlesea and Fry are liable to the plaintiff-respondent Farmer for the $3,000 remaining unpaid upon the judgment.

2. In some cases covenants are construed to be releases because the words used suggest that result. This case does not present that problem. The covenant is clearly one not to execute upon a judgment. Words of release are not used.

Affirmed.

COLLINS, C. J., BATJER and MOWBRAY, JJ., concur.

ZENOFF, J., concurring:

I concur in the result but I prefer that the subject of releases and partial releases be approached in a manner that appears to me to be more realistic than that applied by the majority. Concededly, distinctions have been applied that still represent the law, but current discussions on the subject leave the impression, with me at least, that the Joint Obligations Act will be applied instead of distinguished. I would write the opinion as follows:

Walter Farmer was injured while riding as a passenger in a Whittlesea taxi driven by Orville Fry. The cab collided with an automobile operated by Floyd Lamb. Lamb was employed by the Nevada Bank of Commerce who leased the automobile

from the Pyramid Lease Corporation. The accident occurred October 29, 1965. Before trial the lease corporation and the bank were dismissed from the case as parties. The action remained against Lamb, Victor Whittlesea, doing business as Whittlesea Taxi Company, and Fry, the driver of the cab.

In a settlement before trial Farmer executed a document entitled, "COVENANT NOT TO EXECUTE," with Lamb and the bank. For $10,000 Farmer agreed that he would not seek to enforce any judgment that he might obtain from the trial against Lamb or the Nevada Bank of Commerce. A jury awarded a verdict of $13,000 but credited the $10,000 already paid by Lamb and the bank against the judgment, leaving $3,000. Whittlesea and Fry appeal, claiming principally that under NRS 101.010 through 101.060 the covenant constituted a general release and that he and Fry are no longer liable.[1] He also on appeal raises the objection that it was error to allow Lamb to participate in the trial when Lamb had already been released under the covenant.

---

[1] 101.010 *Short title.* This chapter may be cited as the Uniform Joint Obligations Act.

101.020 *Terms defined.* In this chapter, unless otherwise expressly stated:

1. "Obligation" includes a liability in tort.
2. "Obligee" includes a person having a right based on a tort.
3. "Obligor" includes a person liable for a tort.

101.030 *Discharge of coobligor by judgment.* A judgment against one or more of several obligors, or against one or more of joint, or of joint and several obligors, shall not discharge a coobligor who was not a party to the proceedings wherein the judgment was rendered.

101.040 *Payments credited to coobligors.* The amount or value of any consideration received by the obligee from one or more of several obligors, or from one or more of joint, or of joint and several obligors, in whole or in partial satisfaction of their obligations, shall be credited to the extent of the amount received on the obligations of all coobligors to whom the obligor or obligors giving the consideration did not stand in the relation of a surety.

101.050 *Release with reservation of rights.* Subject to the provisions of NRS 101.040, the obligee's release or discharge of one or more of several obligors, or of one or more of joint, or of joint and several obligors, shall not discharge coobligors, against whom the obligee in writing and as part of the same transaction as the release or discharge expressly reserves his rights; and in the absence of such a reservation of rights shall discharge coobligors only to the extent provided in NRS 101.060.

101.060 *Release without reservation of rights.*

1. If an obligee releasing or discharging an obligor without express reservation of rights against a coobligor, then knows or has reason to know that the obligor released or discharged did not pay so much of the claim as he was bound by his contract or relation with that coobligor to pay, the obligee's claim against that coobligor shall be satisfied to the amount which the obligee knew or had reason to know

1.   What is the purpose of the Joint Obligations Act but to retain liability against one while releasing another in order to escape the harsh common-law rule that allows unfair escape in many situations? Drawing fine distinctions between various covenants or agreements is a toe-dance around the rule and is wasted effort when the import of the statute can be given effect simply by stating that the documents are within the statute but that the intention of the parties shall prevail.

Otherwise, as the majority does in this case, stress is placed upon the importance of labels. "Words of release are not used," states the majority in distinguishing the covenant not to execute, yet even Land v. United States, 231 F.Supp. 883 (N.D. Okla. 1964), cited by the majority, relates that the end result of the document is to release. Thus, I draw my conclusion it is the purpose that counts, not the name tag. See also So. Pac. Co. v. Raish, 205 F.2d 389, 393–94 (9th Cir. 1953); Stephenson v. Duriron Co., 292 F.Supp. 66, 86–87 (S.C. Ohio 1968).

We are in disagreement only on the path we take to reach the same result. Release-type instruments should be declared as within the Joint Obligations statute, and that the legal effect of those instruments which are executed in connection with an incident or transaction should be construed so as to carry out the intention of the parties. This intention is to be sought in the language of the instrument when read in the light of the circumstances surrounding the transaction. McCullough v. Orcutt, 145 N.E.2d 109, 116 (Ill.App. 1957); Pellett v. Sonotone Corp., 160 P.2d 783, 787 (Cal. 1945). The only relevant inquiry equally applicable to all cases in which there has been a discharge in any form is whether there has in fact been full satisfaction. Young v. State, 455 P.2d 889 (Alaska 1969); Prosser, Torts § 46, pp. 270–273 (3rd Ed. 1964); 63 Col.L. Rev. 1142, 1148 (1963). The "express reservation" in this case should be determined in accordance with those guidelines.

2.   Appellant labels the "COVENANT NOT TO EXECUTE" a complete release of all parties because it contained no reservation of rights to proceed against appellants, although its effect was to release Lamb and his employer, the

---

that the released or discharged obligor was bound to such coobligor to pay.

2.   If an obligee so releasing or discharging an obligor has not then such knowledge or reason to know, the obligee's claim against the coobligor shall be satisfied to the extent of the lesser of two amounts, namely, (1) the amount of the fractional share of the obligor released or discharged, or (2) the amount that such obligor was bound by his contract or relation with the coobligor to pay.

bank. This, they contend, is a carry over of the original common-law principle that release of one joint tort-feasor was a release of all and that Nevada's Uniform Joint Obligations Act, NRS 101.020, et seq., disqualifies Farmer's claim because there was no express reservation of rights in the covenant as required by NRS 101.050 and 101.060.

The "express" reservation is ascertained from the intention of the parties. Hicklin v. Anders, 253 P.2d 897 (Ore. 1953); Black v. Martin, 292 P. 577, 580–82 (Mont. 1930). The courts today reject the common-law rule and refuse to allow tort-feasors to escape liability even though another joint tort-feasor has settled with the injured unless the injured's intention to release all parties or persons is manifest. Were it otherwise, wrongdoers who do not make or share in making reparation are discharged while one willing to right the wrong and no more guilty bears the whole loss. McKenna v. Austin, 134 F.2d 659 (D.C. Cir. 1943), cited in Hansen v. Collett, 79 Nev. 159, 380 P.2d 301 (1963).

When a release or covenant contains express language reserving rights against a specific person any discussion is obviated as to whether or not the plaintiff intended to "release" all tort-feasors not parties to it. However, when this is not present the very fact that the plaintiff brought suit is evidence that he did not intend the settlement to be full satisfaction for the injury. McKenna v. Austin, supra, at 663.

In the present case it would appear from the language of the "COVENANT NOT TO EXECUTE" that the plaintiff never intended to release all parties since he agreed only not to "execute" any judgment he might obtain against Lamb or Nevada Bank of Commerce.[2] He intended to get a judgment and he intended to execute the judgment. He merely covenanted not to execute it against Lamb or Nevada Bank of Commerce.

The purpose of the statute is best served by relying upon the statute, not in avoiding it. Such a statute is enacted to prevent the harshness of the common-law rule, not to defeat the intentions of the parties and work as a trap for the unwary. Model Joint Obligations Act, 9B U.L.A., at 353 (1966). When a person is liable for an injury, he should not escape his responsibility on the tenuous ground of lack of proper

---

[2]During the pretrial proceedings the bank and Pyramid Lease Corporation were dismissed as parties from the lawsuit, and the trial court's judgment corrects the jury verdict in that respect. The effect remains, however, that neither Lamb or the bank need pay anything more, but Whittlesea and Fry bear the $3,000 of the $13,000 verdict.

language in the reservation of one's rights. No magic language should be necessary to expressly reserve the right to sue other tort-feasors. Farmer, Lamb and the bank released only the latter two and none other. The agreement does not acknowledge full compensation, only not to seek further satisfaction from Lamb and his employer. In addition, Farmer would hold them harmless against ". . . any and all contribution by reason of such judgment. . . ."

The words "contribution" and "judgment" connote further action after the settlement. By the release of Lamb and the bank the action remaining could only be against Whittlesea and the cab driver. Contribution contemplates reservation of action against somebody. It seems clear that Farmer intended to proceed against the remaining parties to the lawsuit. Whittlesea, a tort-feasor, cannot complain for he gets the benefit of the settlement because he is liable only for the balance of the award after the $10,000 is credited.[3]

3. Although released from any further liability, Lamb's counsel appeared and participated in the trial. The appellant's objection does not state how or in what manner Lamb's participation prejudiced Whittlesea to such extent as to constitute reversible error. So long as Lamb continued as a party in the lawsuit, and it must be remembered that the covenant did not dismiss him as a party, he had a right to appear to protect whatever interests he thought might remain. In the absence of a showing of prejudice the objection is without merit.

Affirmed.

---

[3]For a fuller discussion of the problem see Prosser, Torts § 46 (3rd Ed. 1964); Restatement of Torts § 885 (1939).