PONDEROSA TIMBER & CLEARING CO., AND CRYSTAL BAY DEVELOPMENT CO., APPELLANTS, v. CHARLES M. EMRICH, RESPONDENT.

No. 6070

July 20, 1970                                           472 P.2d 358

[Rehearing denied August 27, 1970]

*Wait & Shamberger,* of Reno, and *Carroll, Davis, Burdick & McDonough,* of San Francisco, California, for Appellants.

*Echeverria & Osborne,* of Reno, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

In this personal injury action the jury favored the plaintiffs with its verdict in the sum of $35,000 against all defendants, Ponderosa Timber, Crystal Bay Development, California Liquid Gas and its employee Atwood. Judgment was duly entered. Two of the defendants, Ponderosa and Crystal Bay, moved for a new trial contending that an undisclosed pre-trial agreement between counsel for the plaintiffs on the one hand, and the insurance carrier for the codefendants Liquid Gas and Atwood on the other, caused the trial to be unfair. That motion was denied. Ponderosa and Crystal Bay have appealed from the judgment and from the order denying a new trial.

The mentioned pre-trial agreement guaranteed the plaintiffs $20,000, subject to the following conditions: (a) if the plaintiffs lose at trial, or obtained judgment only against Liquid Gas and Atwood, the insurance carrier for Liquid Gas would pay $20,000; (b) if the plaintiffs secure judgment against all defendants, or any of them, for less than $20,000, the plaintiffs would look to Ponderosa and Crystal Bay for satisfaction, and the insurance carrier for Liquid Gas would pay the difference between the judgment and $20,000; (c) if the plaintiffs obtain judgment against all defendants in excess of $20,000, the plaintiffs would look solely to Ponderosa and Crystal Bay for satisfaction, and hold Liquid Gas and Atwood harmless.

Counsel for Ponderosa and Crystal Bay did not become aware of the agreement until after the trial of the case. Upon learning of it, they moved for a new trial upon the grounds that the agreement constituted an irregularity in the proceedings preventing a fair trial, and surprise, which ordinary prudence could not have guarded against. NRCP 59(a)(1)(3). The substance of their argument upon the motion for new trial, and now to us, is that the agreement impelled counsel for the codefendants Liquid Gas and Atwood to encourage a plaintiffs' verdict for more than $20,000, since such a verdict would relieve those defendants of any responsibility to pay.

The agreement is unusual. It is neither a release, a covenant not to sue, nor a covenant not to execute. Cf. Whittlesea v. Farmer, 86 Nev. 347, 469 P.2d 57 (1970). It did not settle the case and discharge the cause of action against Liquid Gas and Atwood. It did guarantee the plaintiffs $20,000 subject to specified conditions, and possessed the potential to encourage counsel for Liquid Gas and Atwood to join forces with the plaintiffs to promote a verdict of more than $20,000.[1] This, however, was not its inevitable consequence. The district court refused to disturb the verdict and grant a new trial. That

---

[1] The validity of the agreement is not before us. Counsel for plaintiffs and for defendants Liquid Gas and Atwood were asked before trial whether they had settled their case. Each answered "no." The district court properly found that the answers were technically correct; that the agreement settled nothing. However, that court believed that the existence of the agreement should have been disclosed, and for that reason, set it aside and ordered that the contracting parties either file a disclaimer or a satisfaction of judgment to the extent of one half thereof. That satisfaction was filed and Liquid Gas and Atwood released from further liability. Consequently, the court order was not challenged and Liquid Gas and Atwood are not parties to this appeal.

court apparently believed that the agreement did not influence the outcome of the case.

It is difficult to perceive how the district court could have ruled otherwise. The jury was not aware of the agreement. There is ample evidence to support the verdict. Indeed, the sufficiency of the evidence is not challenged by the appealing defendants. They had full opportunity to defend in the manner selected by their counsel. The special damages sustained by the plaintiffs were not controverted. Neither did they question the extent of injury suffered by the plaintiff Charles Emrich as described by his treating physician. None of the defendants offered medical evidence in defense. Counsel for the appealing defendants did not discuss the matter of damages in his jury summation, but limited his argument to liability.

In spite of these exceedingly significant factors the appealing defendants contend that the trial was unfair. This contention is made because of the jury argument of counsel for the codefendants in which he abandoned the pleaded defenses of contributory negligence and assumption of the risk, admitted liability, and suggested that all of the defendants should be held liable to the plaintiffs. That counsel did not indicate to the jury that the verdict should be in excess of $20,000, or in any other amount.

We cannot fault that argument. There is no impropriety in admitting liability when the evidence points to liability, as it did in this case. That is a matter of trial strategy. Neither is it improper to suggest that the other defendants in the case should share the burden of payment when the evidence supports that suggestion. It is common for codefendants to assume such a stance before a jury. In short, there is nothing which counsel for Liquid Gas and Atwood did, or failed to do, which caused the trial to be unfair. Counsel for the appealing defendants was free to persist in his effort to escape liability and endeavored, unsuccessfully, to do so.

Affirmed.

ZENOFF and BATJER, JJ., concur.

MOWBRAY, J., with whom COLLINS, C. J., agrees, dissenting:

Respectfully, we dissent.

We consider that the narrow issue presented for our consideration in this appeal is whether counsel's failure to disclose

to the trial judge the existence of a pretrial settlement between counsel's clients, California Liquid Gas Corporation and its employee, Charles Atwood, who were defendants in the trial below, and respondent Charles M. Emrich and his minor son, Paul, the plaintiffs, constituted grounds for granting a motion for a new trial made by appellants Ponderosa Timber & Clearing Co. and Crystal Bay Development Co., the other named defendants.

After examining the record of the case, which was tried to a jury, we conclude that the motion should have been granted, and we would reverse the order denying the motion and remand the case to the district court for a new trial.

### 1. *The Facts.*

Respondent-plaintiff Charles M. Emrich and his son Paul were injured while attempting to couple a butane truck rig at Incline Village, Nevada. Charles and Paul sued for damages. In their complaint they name as defendants: (1) Charles Atwood, the driver of the rig; (2) Atwood's employer, California Liquid Gas Corporation; (3) Crystal Bay Development Co., owner of the property upon which the accident occurred; and (4) Ponderosa Timber & Clearing Co., engaged by Crystal Bay Development Co. to maintain its roads.

The trial commenced in district court on June 24, 1968. The "settlement agreement" that is the center of this controversy provided in part that Transport Indemnity Company, the insurer of defendant California Liquid Gas Corporation, would pay the Emrichs $20,000, subject to certain conditions and stipulations.[1] The condition that is relevant to this appeal is

---

[1] The agreement, dated June 25, 1968, provided as follows:

"This will confirm the agreement between your clients, Charles M. Emrich and Paul Emrich, a minor, by and through his guardians, Charles M. Emrich and Virginia Emrich, and Transport Indemnity Company, the insurance carrier for the defendants California Liquid Gas Corporation and Charles Atwood, relative to the pending civil action now in the course of trial in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe.

"Transport Indemnity Company guarantees that your clients will receive the sum of $20,000 regardless of the outcome of the pending civil suit.

"This guarantee is subject to and dependent on the following conditions:

"1. In the event of a judgment against the plaintiffs and in favor of all of the defendants, or in the event the plaintiffs obtain a judgment solely against California Liquid Gas Corporation and its employee, Charles Atwood, Transport Indemnity Company will pay the plaintiffs the sum of $20,000 in full satisfaction of said judgment.

"2. If the plaintiffs obtain a joint judgment against the defendant California Liquid Gas Corporation, and its employee, Charles Atwood,

the last-mentioned stipulation, No. 3, which is to the effect that if the Emrichs obtained judgment *in excess* of $20,000 against *all* the named defendants, then defendants "California Liquid Gas Corporation, its employee, Charles Atwood, and their insurance carrier, Transport Indemnity Company, [would be held] harmless relative to said judgment."

After the settlement agreement had been signed by counsel, they were asked by counsel for appellants, in the district judge's presence while in his chambers, whether a settlement agreement had been executed. Counsel flatly denied the existence of an agreement.[2] The case proceeded to conclusion, and the jury returned a judgment in favor of the plaintiffs and against *all* the defendants, assessing damages in the amount of $35,000. Thereafter, on July 8, counsel for appellants became aware of the June 25 settlement and moved for a new trial. The district judge denied the motion, but in doing so declared the settlement agreement null and void, because "the attorneys should have, as officers of the Court, made a full disclosure of all of the settlement negotiations or negotiations of any other type resulting in any sort of an agreement. . . ."

   2.   *The Motion for a New Trial.*

Appellants have urged that a new trial be granted under the provisions of NRCP 59(a) on the grounds numbered (1)

---

and Ponderosa Timber & Clearing Company and Crystal Bay Development Co., or any of them, in a sum less than $20,000, plaintiffs will look solely to the defendants Ponderosa Timber & Clearing Company and Crystal Bay Development Co., to satisfy said judgment, and Transport Indemnity Company will pay the difference between said judgment and $20,000.

   "3.   If the plaintiffs obtain a joint judgment against the defendant California Liquid Gas Corporation and its employee, Charles Atwood, the Ponderosa Timber & Clearing Company and Crystal Bay Development Co., or any of them, in excess of $20,000 the plaintiffs will look solely to the defendants Ponderosa Timber & Clearing Company and Crystal Bay Development Co. to satisfy said judgment and will hold California Liquid Gas Corporation, its employee, Charles Atwood, and their insurance carrier, Transport Indemnity Company, harmless relative to said judgment."

   [2]From the deposition of counsel for California Liquid Gas Corporation and Charles Atwood:

   "Q   [by Jack D. Burdick, counsel for defendants Crystal Bay Development Co. and Ponderosa Timber & Clearing Co.]   What was the conversation, then, that took place then in the chambers of the Court about any agreements that you and Mr. Echeverria might have reached between yourself?

   "A   Mr. Shamberger stated that he wanted to ask Pete [Echeverria] and me a question in the presence of the Judge, and we said, 'All right,' and his question was whether we had settled the case.

   "Mr. Echeverria answered, 'No,' and I answered, 'No.' "

and (3) thereunder, in that counsel's failure to disclose the agreement, when asked in the presence of the district judge whether such an agreement existed, constituted "(1) [i]rregularity in the proceedings of the . . . adverse party, . . . by which . . . [appellants were] prevented from having a fair trial; . . . (3) . . . surprise which ordinary prudence could not have guarded against"—both of which materially affected the substantial rights of the appellants.[3]

We are not here concerned with a covenant not to sue nor a covenant not to execute. The very nature of the settlement agreement caused one of the defendants being sued to attempt to promote the plaintiffs' money recovery. That this effect resulted is borne out by the manner in which the defense was conducted in this case, and the court should not countenance that conduct. For example, in his summation, counsel for defendants California Liquid Gas Corporation and Charles Atwood stated:

"Mr. Shamberger [counsel for defendants Ponderosa Timber & Clearing Co. and Crystal Bay Development Co.] explained that the defendants were relying on two defenses, contributory negligence and assumption of risk."[4]

Counsel continued:

"Now I am not going to stand here and make a fool of myself by telling you people that there is any merit in the defense of contributory negligence. There isn't. Even though that was asserted in the defenses here, as far as I am concerned, you can forget about that. You heard no instruction on assumption of risk. So the second side of this case, if there was a second side, is out of the case, too.

". . .

---

[3]NRCP 59. "NEW TRIALS; AMENDMENT OF JUDGMENTS

"(a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds materially affecting the substantial rights of an aggrieved party: (1) Irregularity in the proceedings of the court, jury, master, or adverse party, or any order of the court, or master, or abuse of discretion by which either party was prevented from having a fair trial; (2) Misconduct of the jury or prevailing party; (3) Accident or surprise which ordinary prudence could not have guarded against; (4) Newly discovered evidence material for the party making the motion which he could not, with reasonable diligence, have discovered and produced at the trial; (5) Manifest disregard by the jury of the instructions of the court; (6) Excessive damages appearing to have been given under the influence of passion or prejudice; or, (7) Error in law occurring at the trial and objected to by the party making the motion. . . ."

[4]In answering the complaint, defendants California Liquid Gas Company and Charles Atwood also asserted the affirmative defenses of contributory negligence and assumption of risk.

". . . I submit to you ladies and gentlemen there aren't three sides to this case, there aren't even two sides, there is one side, and that side is that all of these defendants are responsible to the plaintiff, and I consider it my duty as an officer of this court to suggest to you that in the interest of justice, if we are to have justice in this case, there must be a plaintiff's verdict against all of the defendants."

Counsel then conceded special damages and left the award of general damages to the discretion of the jury.[5]

Counsel stated: "This is the kind of a case when a lawyer . . . has to remind himself of the oath that he took when he was admitted to practice . . . to see that justice is done. . . .

". . .

"I feel that I have performed my duty to my client, to this Court, by making a full and frank and candid disclosure of my position in this case, and accordingly I will submit it to you."

Appellants, as codefendants, had every right to rely upon the position of defendants California Liquid Gas Corporation and Charles Atwood as expressed in their pleadings, which asserted the affirmative defense of contributory negligence and assumption of risk. Indeed, NRCP 11 provides, in part: "The signature of an attorney constitutes a certificate by him that he has read the pleading [and] that to the best of his knowledge, information and belief there is good ground to support it. . . ."[6]

---

[5]The special damages exceeded $15,000.

[6]From the deposition of counsel for California Liquid Gas Corporation and Charles Atwood:

"Q [by Jack D. Burdick—see footnote 2, supra] And being an attorney and an officer of the Court I take it you construe it as your duty not to present or make claim on defenses that are wholly without merit; is that true?

"A That's right.

"Q And did you on June 21st, which was apparently the Friday before the trial, file an Answer to the Amended Complaint? Do you want to look in your file there? Let me hand you this document and ask you if that does not appear to be a true copy of the document that you signed, that you executed and filed on behalf of your client on June 21st.

"A That's right.

"Q And does that document set up the defenses of contributory negligence and assumption of risk?

"A Yes.

"Q And you knew at the time you filed it that they were wholly without merit?

"A That's right.

"Q Do you make a habit or custom of filing pleadings that set up defenses that you know are wholly without merit?

"A No.

"Q Why did you do it in this case?

Counsel having been informed that no settlement had been made, the element of surprise became relevant when cocounsel in effect admitted liability in his final argument and urged the jury to award damages against all the defendants—knowing at that very time that if the award exceeded $20,000 his clients would be held harmless.

We believe that the nature of the settlement agreement in this case violated the traditional adversary process in the trial below and thereby denied appellants their right to a fair trial.

---

"A   Well, I did it in this case primarily because I had no idea what to do in the defense of the case on that date.

"Q   In other words, if I understand you correctly that you don't make it—

"A   I didn't know how to defend the case. I was grasping at straws.

"Q   You don't make a habit of filing unmeritorious defenses except in cases where you have no defense, and then you will file any defense you can conjure up, is that about it?

"A   Well, let's talk about this case. In this case I had no conception of what to do in the defense and I just threw them in.

"Q   You told Mr. Echeverria that there was no agreement between he and you that you would not contest the damages in this case, right? Is that what you just told Mr. Echeverria a few minutes ago?

"A   Yes.

"Q   Once you executed the agreement of June 25, 1968, you knew as an experienced trial lawyer that you didn't have to sit down and draw it out in hieroglyphics or carve it in stone, you knew that you were not going to go in there and contest the damages?

"A   That's right.

"Q   And you knew that Mr. Echeverria knew that, right?

"A   Right.

"Q   And the same thing with regard to contributory and assumption of risk?

"A   That's correct.

"Q   And the reason was you had an agreement that you felt protected your client, right?

"A   Well, yes, that's right.

"Q   So you didn't need any agreement with Mr. Echeverria to do those things, you knew what was going to happen; right?

"A   No, I didn't know—I didn't know the outcome of the case.

"Q   You knew what you were going to do?

"A   I knew what I was going to do.

"Q   You weren't going to be a damn fool and go in there and start arguing damages and try and get a verdict for $12,000 so your client would end up paying $8,000; right?

"A   That's correct."