Rose E. BREITKREUTZ et al., Appellants,

v.

Robert W. BAKER and John Butrovich,
Appellees.

No. 1616.

Supreme Court of Alaska.

Sept. 14, 1973.

Robert A. Parrish, O. Nelson Parrish, Fairbanks, for appellants.

Howard Staley, Merdes, Schaible, Staley & DeLisio, Anchorage, for appellees.

OPINION

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN and BOOCHEVER, Justices.

ERWIN, Justice.

This case arose out of a three-party automobile accident occurring on or about January 8, 1966. The accident occurred at approximately 4:00 p. m. on the Richardson Highway just outside the Fairbanks city limits. It was dark, rendering the visibility poor. The highway was slippery and appeared glassy. Prior to the occurrence of the accident in issue, Butrovich had been following the Breitkreutz vehicle for about a mile proceeding in a northerly direction.

At the same time Baker was proceeding south on Cushman Street through the point outside the Fairbanks city limits where Cushman Street becomes the Richardson Highway. As Baker proceeded south on the Richardson Highway, he observed three vehicles approaching him in the left lane driving in a northerly direction toward Fairbanks. Baker testified that as he approached this line of traffic there was "an ice ledge along the side of the road . . . and [his] tires on the right hit this ledge [and] caused [the automobile] to deflect and spin, to the left." He stated that after hitting the ledge of ice

> My vehicle started to spin to the left, I had the impression that it would scribe a complete 360° circle in that direction. I began formulating an evasive plan to miss either or all of the cars in line. The first thought that occurred to me was if I made a complete circle I could perhaps on second go-around drive between one or the three [sic] cars in line. Then it occurred to me they were all close and I would have to hit one of the three cars. At that point I struck the first car, ricochetted—to my impression ricochetted off to the left. I—I beg your pardon, off to the right back.
> . . .

Following the collision between the Baker and Breitkreutz vehicles, Butrovich's vehicle collided into the rear of the vehicle driven by Breitkreutz.

In the original complaint, Rose E. Breitkreutz, appellant herein, asserted claims for personal injury and property damage against defendants Baker and Butrovich. Robert D. Breitkreutz, the husband of Rose E. Brietkreutz, asserted derivative claims against the defendants. The appellee Butrovich answered, alleging contributory negligence as an affirmative defense and asserted a cross-claim against defendant Baker for property damage to Butrovich's automobile.

Breitkreutz entered into a pre-trial settlement agreement with defendant Baker. The agreement settled Baker's pecuniary liability and required him to remain in the case as a defendant. Appellee Butrovich dropped his cross-claim for damages against defendant Baker and waived his right to a contributory negligence defense against appellant Breitkreutz. When the case was heard before a jury, Baker's counsel announced that his client had no interest in the outcome of the lawsuit.

Thus the case proceeded to trial with the issues narrowed to (1) whether Butrovich was negligent, (2) whether Butrovich's negligence was the proximate cause of harm to plaintiff Breitkreutz, and (3) assuming Butrovich was found to be liable, the extent of the damages sustained by each of the various plaintiffs.

Following introduction of the evidence by both parties, Breitkreutz's counsel made a motion for directed verdict on the issue of liability. The trial court denied Breitkreutz's motion, ruling that it was a jury question as to whether or not Butrovich had any excuse for his violation of the applicable regulations.

Subsequently, the jury returned a verdict in favor of Butrovich, finding no liability to Rose or Robert Breitkreutz.

Appellant raises six issues on appeal.

1. Should a directed verdict have been granted in favor of Breitkreutz on the issue of liability against appellee Butrovich?

2. Did the trial court err in giving instructions concerning excuse and justification of the alleged traffic violations?

3. Did the trial court err by instructing the jury with the wrong traffic regulations?

4. Was the instruction regarding proximate cause in error?

5. Were the instructions as a whole ambiguous, confusing, slanted, repetitious, and in many respects erroneous and inconsistent with Alaska law?

6. Did the trial court err by not permitting Baker to defend the Breitkreutz claim against him more actively than was allowed at trial?

I

■ The initial question raised was whether a directed verdict should have been granted in favor of appellant on the issue of liability. Appellant claims the record is silent of *any* evidence in favor of appellee Butrovich which would warrant allowing the case to go to the jury. This court must view the evidence in the light most favorable to appellee Butrovich and give him the benefit of all inferences which the evidence fairly supports.[1]

Plaintiff's motion for directed verdict was based on her contention that Butrovich inexcusably violated 13 AAC 104.91(a) and (d), and 13 AAC 104.40(a) and therefore, under this court's decision in Ferrell v. Baxter, 484 P.2d 250 (Alaska 1971), his violation constituted negligence per se.

■ This court in *Ferrell* made it clear that the violation of a statewide administrative traffic regulation adopted pursuant to a statutory authority is to be given the same effect as the violation of a traffic statute itself.[2] This court also stated that once the plaintiff proves that the defendant violated a statute, ordinance, or traffic code provision that embodied a reasonable standard of care, he has established a prima facie case of negligence. If the violation is the cause of an injury to a member of a class of persons which that law was designated to protect, and the injury was of the type that the law was designed to prevent, then there is established a prima facie case of negligence. The appellant contends that the regulation applies, the uncontroverted evidence shows the defendant violated it, and no evidence of excuse or justification was offered. If this is so, plaintiff contends he is entitled to a directed verdict on the issue of negligence.

It thus appears that two questions must be answered by this court: The first is whether the regulations in question fall under the strict test set forth in *Ferrell*; the second being, if so is there any evidence of excuse or justification which would allow the issue to go to the jury.

■ The first regulation the appellee allegedly violated was 13 AAC 104.40. It provided:

13 AAC 104.40 Following Too Closely

(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

Now amended to provide:

13 AAC 02.090 Following Too Close

The driver of a motor vehicle may not follow another vehicle more closely than is reasonable and prudent and with due regard to the speed of the vehicles and the traffic upon and along the condition of the roadways.[3]

This section sets no precise standards that modify the common law, but only cautions a motorist not to follow another vehicle "more closely than is reasonable and prudent, . . . ." Thus only the usual

---

1. 5A J. Moore, Federal Practice § 50.02, at 2317–2330 (2d ed. 1971) ; *e. g.*, Braund, Inc. v. White, 486 P.2d 50, 53–54 n. 5 (Alaska 1971).

2. 484 P.2d 250, 257 (Alaska 1971).

3. Both the old and amended traffic regulations are included because at the time of the accident the old regulations were in effect, but the trial court used the new regulations when giving instructions to the jury. This variance is discussed in detail within.

test of reasonable care is codified.[4] The negligence per se standard outlined by *Ferrell* is inapplicable, and the issue correctly went to the jury to be decided under the reasonable care test.

There were facts represented at trial which would allow the jury to find that Butrovich was not following too closely. Appellee/Butrovich testified that he had adequately compensated for the poor road and weather conditions. He stated that immediately prior to the accident he was proceeding in a cautious manner approximately 100 feet behind the Breitkreutz vehicle.[5] There was conflicting testimony on this point,[6] and it would seem appropriate for the jury to decide whether or not Butrovich had violated 13 AAC 104.40 by following another vehicle in an "unreasonable and imprudent" manner. The trial court correctly denied the motion for a directed verdict in this instance.

The alleged violation of 13 AAC 104.91 presents a much more difficult problem in light of *Ferrell* and this court's adoption therein of the rules set forth in Restatement (Second) of Torts §§ 286, 288(A) and 228(B) (1965). 13 AAC 104.91 provided:

(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event, speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

\* \* \* \* \* \*

(d) The driver of every vehicle shall, consistent with the requirements of paragraph (a), drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazard exists with respect to pedestrian or other traffic or by reason of weather or highway conditions.

It is now amended as 13 AAC 02.275 to provide in part:

(a) A person may not drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to actual potential hazards at the time. Speed shall be controlled so as to avoid colliding with a person, vehicle or other conveyance operated in compliance with the legal requirements.

\* \* \* \* \* \*

(c) The driver of a vehicle shall, consistent with (a) of this section, drive with an appropriate reduced speed when approaching and crossing an intersection, or when a special hazard exists with respect to pedestrians or other traffic or by reason of weather or roadway conditions.

---

4. *See* Lester v. John R. Jurgensen Company, 400 F.2d 393, 395–396 (6th Cir. 1968); Eisenhuth v. Moneyhon, 161 Ohio St. 367, 119 N.E.2d 440 (1954).

5. Butrovich testified:
Q. How close were you, in your mind, to Mrs. Breitkreutz's car when you say Mr. Baker's car hit her car?
A. I do not think at any time I was closer than a hundred feet to the front ca—to Mrs. Breitkreutz's car.
Q. Is it now your testimony that you were not within a hundred feet of Mrs. Breitkreutz's car when Mr. Baker struck her car?
A. Yea—I would say—I can't say whether it was 80' or a hundred feet but I was not tailgating. I don't make a practice of tailgating and the conditions didn't warrant it that day.
Q. Now my question I believe was, were you 100' from Mrs. Breitkreutz's car when you saw Mr. Baker's car strike her car?
A. Approximately.

6. Baker testified that at the time his vehicle started to spin, "[M]y distance from the first car [Breitkreutz] in the line of traffic to be approximately 12 to 15'. The vehicle immediately following the first car in line I would estimate the distance to be 20 to 25'."
Defendant attempted to discredit Baker's testimony on cross-examination by demonstrating he had no time to make accurate observations and that his memory of the incident may have been faulty.

Unlike 13 AAC 104.40, the above regulation sets out more than a standard of due care. It cautions drivers in *every event* to control their speed "as may be necessary to avoid colliding with . . . a vehicle . . . ." Appellant contends that a literal interpretation of the ordinance should be adopted and since Butrovich's vehicle collided with Breitkreutz's vehicle, he was negligent per se (absent any excuse or justification to be discussed *infra*) and a directed verdict on the issue of liability should have been ordered. Appellee Butrovich argues that the standard set forth by appellant would be too inflexible and would many times lead to absurd results. He urges that the standard of reasonable care should be adopted since the regulation contains language of due care and reasonableness.

In *Ferrell* this court upheld the trial court's adoption of 13 AAC §§ 96 and 104.-91 as standards of reasonable behavior displacing common law negligence. This court stated:

> The court was not in error in adopting these regulations as standards of reasonable behavior under Restatement § 288B. They formed part of the knowledge all drivers in this state must possess to obtain driver's licenses. Moreover, they merely codify some of the most basic and commonsense rules of the road—the duty to keep to the right side of the road and to maintain a speed no greater than that which is safe having due regard for all the driving conditions at the time and place. To require adherence to these rules of the road was most reasonable. The regulations were doubtless followed by the average reasonably prudent driver that day on the Richardson Highway.[7]

13 AAC 104.91 contains specific instructions (to control one's speed in such a manner "to avoid colliding with any . . . vehicle . . . .") as well as general language ("[n]o person shall

drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions . . . .").

The Sixth Circuit was faced with a similar problem in Lester v. John R. Jurgensen Co.[8] The court considered the question of whether the violation of Ohio Revised Code § 4511.66 constituted negligence per se. That section provides in pertinent part:

> . . . no personal shall stop . . . upon the paved or main traveled part of the highway if it is practicable to stop . . . off the paved or main traveled part of said highway.

The court stated:

> It is settled law in Ohio that when a statute expressed a rule of conduct in general or abstract terms negligence *per se* has no application and that in such a case liability is determined by the usual test of reasonable care. In a clear analysis of the Ohio law, the District Court interpreted the qualifying term "practicable" as equivalent to reasonable. Given that meaning for "practicable", the statute merely proscribes parking on the "main traveled part of the highway" when so parking would be unreasonable. Therefore, the court properly refused a negligence *per se* charge; and since the evidence concerning the reasonableness of parking on the highway was in conflict, the Court properly refused to take the issue of the Defendant's negligence from the jury. (Emphasis in original, footnote omitted.)[9]

The basis of the *Lester* decision was Eisenhuth v. Moneyhon[10] previously decided by the Ohio Supreme Court. The paramount issue in *Eisenhuth* was whether violation of Section 6307–38 of the General Code of Ohio constituted negligence per se. The pertinent part of the statute reads as follows:

> (a) No person shall turn a vehicle or trackless trolley from a direct course

---

7. 484 P.2d at 265.

8. 400 F.2d 393 (6th Cir. 1968).

9. *Id.* at 396.

10. 161 Ohio St. 367, 119 N.E.2d 440 (1954).

upon a highway unless and until such person shall have exercised due care to ascertain that such movement can be made with reasonable safety to other users of the highway and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement or after giving an appropriate signal in the event any traffic may be affected by such movement.

(b) A signal of intention *to turn right or left shall be given in sufficient time in advance of the movement indicated to give ample warning to other users of the highway who would be affected by such movement.* (Emphasis added.)

The Ohio Supreme Court held that when a standard of care is fixed by the legislature it is final and conclusive except where:

. . . [T]he enactment is so vague or dependent upon a variety of facts and circumstances as to require definition by a court or jury before it may be applied to the facts of a particular case.

\* \* \* \* \* \*

In other words, if a positive and definite standard of care has been established by legislative enactment whereby a jury may determine whether there has been a violation thereof by finding a single issue of fact, a violation is negligence per se; but where the jury must determine the negligence or lack of negligence of a party charged with the violation of a rule of conduct fixed by legislative enactment from a consideration and evaluation of multiple facts and circumstances by the process of applying, as the standard of care, the conduct of a reasonable prudent person, negligence per se is not involved. [11]

In *Ferrell* we had an opportunity to examine 13 AAC 104.91. While we approved the trial court using the negligence per se

instruction in that instance, we did note the general rather than the specific import of the regulation. We stated a driver was under a duty to, "maintain a speed no greater than that which is safe having due regard for all the driving conditions at the time and place ." [12]

Even where a collision occurred we made clear that there are instances where the regulation may not be violated, there again emphasizing the general nature of the regulation.

We disagree. The jury *could have found the accident was caused by Mrs. Ferrell's excessive speed.* This prevented her from stopping short of the point of collision. Sufficient evidence was offered to convince reasonable men that Mrs. Ferrell's realization of her excessive speed and the imminent collision caused her to panic and apply her brakes too hard. This overapplication of the brakes in turn may well have thrown her car into the final skid. *The mere fact that neither Mrs. Ferrell nor her passengers believed she was going too fast, while it would tend to rebut such an inference, would not preclude a jury from reaching the conclusion that she was in fact speeding.* (Emphasis added.) [13]

We agree with the rationale articulated above and feel it was appropriate in this instance for the jury to decide whether or not Butrovich had violated 13 AAC 104.91 by driving at a speed "greater than is reasonable and prudent". There is enough evidence in the record to support the trial court's decision not to order a directed verdict against Butrovich. Appellant did not qualify for a directed verdict merely by showing appellee had not controlled his speed in such a manner to avoid a collision.[14] The issue of appellee's negligence correctly went to the jury. A di-

---

11. *Id.* at 443–444.

12. 484 P.2d at 265.

13. *Id.* at 266.

14. There was testimony in the record that the highway was slippery, the visibility was poor, and that Butrovich was proceeding at a slow rate of speed 100 feet behind the Breitkreutz vehicle.

rected verdict would not have been proper in this instance.[15]

## II

Appellant Breitkreutz next argues it was error for the trial judge to give instructions on the role of excuse and justification when there was no such evidence in the record.

■■ Butrovich initially urges that this assertion of error by Breitkreutz should not be considered by this court because Supreme Court Rule 11(a)(6) was not complied with. This rule states in pertinent part:

When the error alleged is to the charge of the court, the specification shall set out the part referred to verbatim, whether it be an instruction given or in instructions refused, together with the grounds of the objection urged at trial.

This court has held that when allegations of error are made concerning the instructions of the trial court, the grounds of objection urged at trial must be set forth.[16] Breitkreutz did not do this and ordinarily this allegation of error would not be considered.

However, there are circumstances why the court should invoke Appellate Rule 45 which states:

These rules are designed to facilite business and advance justice. They may be relaxed or dispensed with by this court where a strict adherence to them will work surprise or injustice.

During the trial plaintiff initially made a good faith attempt to object when he disagreed with instructions the court adopted or the court refused to give instructions he requested. However, the judge stated that plaintiff would

. . . have an exception and you do have an exception as to any instructions requested or [sic] not given or given in modified form.

Rather than going through all of the requested instructions, you can have without going over all of the grounds, you can have an automatic exception to those that are not given that are requested.

&ast; &ast; &ast; &ast; &ast; &ast;

I can't see how—why you would be prevented from going to the Supreme Court in this type of ruling on behalf of the court.

Supreme Court Rule 11(a)(6), which is applicable to this appeal, should be relaxed in this instance since it was reasonable for plaintiff not to make specific objections at trial to this instruction after the preceding statements were made to him by the court.

This court held in *Ferrell* that certain violations may be excused. The court adopted the excuses set out in Restatement (Second) of Torts § 288A (1965) which provides:

(1) An excused violation of a legislative enactment or an administrative regulation is not negligence.

(2) Unless the enactment or regulation is construed not to permit such excuse, its violation is excused when

(a) the violation is reasonable because of the actor's incapacity;

(b) he neither knows nor should know of the occasion for compliance;

(c) he is unable after reasonable diligence or care to comply;

(d) he is confronted by an emergency not due to his own misconduct;

(e) compliance would involve a greater risk of harm to the actor or to others.

---

15. Even if a negligence per se standard had been appropriate in this instance, there was ample evidence of excuse in the record to uphold the trial judge's decision not to enter a directed verdict. See discussion II *infra*.

16. Higgins v. Lantz, 394 P.2d 776, 777 (Alaska 1964) ; Parks v. Brown, 368 P.2d 220, 222 (Alaska 1962).

The trial court gave the following instructions to the jury which appellant now objects to:

Instruction No. 18:

If you find by a preponderance of the evidence that the defendant violated any of the provisions of the law just read to you and that any such violation proximately caused the accident in question you are instructed that a prima facie case has been proven that that person was negligent. This prima facie case of negligence is not conclusive. It may be overcome by other evidence showing that under all circumstances surrounding the event in question the conduct of the person was excusable or justifiable.

Instruction No. 19:

To show that a violation of law was excusable or justifiable so as to over-come this prima facie case of negligence, in the event that you find that the Defendant violated any of the foregoing provisions of law, then the Defendant must convince you, the jury, that any such violation of law resulted from causes or things beyond his control and that he was not negligent. If in accordance with these instructions you find that the Defendant has violated the law and that any such violation of the law proximately caused the accident in question and that you further find that the Defendant has failed to so excuse or justify such violation of law, then you must find that party to be negligent.

These same instructions were given in *Ferrell* and not held to be in error.[17] Appellant Breitkreutz argues that it was error to give the instructions in this instance pertaining to excuse or justification because there was no evidence in the record which would allow a finding of excuse or justification by the jury. We disagree.

We hold that if the jury found Butrovich violated the regulations in question there is enough evidence in the record to find that the violation was excused under Section 288(2)(c) of the Restatement (Second) of Torts.[18] AAC 104.01(a) sets forth the basic speed law which is flexible depending upon conditions at the particular moment as opposed to a fixed maximum speed law. Because of the extreme seasonal variations in Alaska and their effect on driving conditions, it is a task of extreme difficulty to know exactly how far one should follow another vehicle in order to avoid colliding with it under all conditions.[19]

We find there was sufficient evidence of Butrovich's inability to comply with the regulations herein that it was not error to submit the questioned instruction to the jury. There is evidence in the record of a sudden collision in Butrovich's path, slippery road conditions, poor visibility and Butrovich's own due care (slow speed and a sufficient distance between his vehicle and Breitkreutz's vehicle). Under these conditions the jury should not be foreclosed from finding that Butrovich was excused because even using due diligence and care he could not comply.

17. 484 P.2d at 255–256.

18. The Restatement in a comment to this section states:

g. *Diligence and care.* Most legislative enactments and regulations are construed to require only reasonable diligence and care to comply with them; and if after such diligence and care the actor is unable to comply, his violation will ordinarily be excused.
Illustration:
4. A statute provides that railroad companies shall keep their fences free from snow and ice. A heavy blizzard covers the fences of the A Railroad Company with snow. Although A Company has exercised all reasonable care to provide snow removal equipment, and acts as promptly as possible, it is unable to remove the snow from one of its fences for three days. During the second day B's cow, in an adjoining field, crosses the fence on a mound of snow, and is struck by a train. A is not liable to B on the basis of a violation of the statute. Restatement (Second) of Torts § 288A, Comment g at 36 (1965).

19. *Cf.* State v. Abbott, 498 P.2d 712 (Alaska 1972).

## III

 Appellant asserts error in the giving of Instruction No. 18 where the court instructed the jury on the law of Alaska as embodied in the Alaska Administrative Code. The regulations used by the trial court were not in effect at the time of the accident. As set out in the instruction, the law reads:

13 AAC 02.275 Basic Rule

(a) A person may not drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to actual potential hazards at the time. Speed shall be controlled so as to avoid colliding with a person, vehicle or other conveyance operated in compliance with the legal requirements.

\* \* \* \* \* \*

(c) The driver of a vehicle shall, consistent with (a) of this section, drive with an appropriate reduced speed when approaching and crossing an intersection, or when a special hazard exists with respect to pedestrians or other traffic or by reason of weather or roadway conditions.

13 AAC 02.090 Following Too Close

The driver of a motor vehicle may not follow another vehicle more closely than is reasonable and prudent and with due regard to the speed of the vehicles and the traffic upon and along the condition of the roadways.

The appellant advised the court that the above regulations were incorrect since they were not in effect at the time of the accident.[20]

That the trial court erred is clear. When the regulations were objected to this was considered by the court and the following discussion took place:

The Court: Number 17 "A person seeking recovery." Number 18, "I instruct you [that] the law of Alaska." Now, it is correct, Mr. Parrish that the law is applicable, and I'll give this back to you now. In 1966, were embodied in Alaska, laws and traffic regulations. I have not changed this because they're substantially the same. In fact, there's no—what I have cited here is 13 AAC and yours would be under the—come out of a blue book.

Mr. Parrish: Uh-huh.

The Court: I've checked them word for word and can find no substantial difference in how the two are worded. Now if this—if you can point where there— the statutes are different to me in—or different in any substantial degree I'd be willing to reconsider that one but as it is now I'm going to go ahead and give them as they are.

Mr. Parrish: Very well, Your Honor.

At that time no one could point out any substantive difference between the old and amended regulations as applied to the facts of this particular case. In any event, there would seem to be no prejudice to plaintiff by reason of the court giving the amended

---

20. The regulations in effect at the time of the accident stated:
13 AAC 104.91.
(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual potential hazards then existing. In every event, speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.
\* \* \* \* \*
(d) The driver of every vehicle, consistent with the requirements of paragraph (a), drive with an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when travelling upon any narrow or winding roadway, and when special hazard exists with respect to pedestrian or other traffic or by reason of weather or highway conditions.
13 AAC 104.40.
(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

regulations, and thus the error is classified as harmless.[21]

## IV

■■■■ Appellant next argues the trial court erred in giving Instruction No. 21. The questioned instruction stated:

> The jury is instructed that if, in this case you should find that damages occurred through the multiple collisions of defendants Baker and Butrovich with Plaintiff's car, and that if it is impossible to determine how much damage is attributed to one and how much is attributed to the other, or how much damage was caused to the plaintiff by the force of both blows, then each is responsible for the entire amount of damage to plaintiff if you should find that such defendant was negligent and that said negligence was the proximate cause of any injury to the plaintiff.

Appellant contends that this instruction gave the indication to the jury that there was only one proximate cause of the damages. Appellant is quite correct in arguing that in certain instances two or more acts may be charged with a single result.[22]

However, we note that the trial court correctly stated the law regarding proximate cause in the final paragraph of Instruction No. 15. It reads:

> This does not mean that the law seeks and recognized only one proximate cause of an injury, consisting of only one factor, one act, one element or one set of circumstances, or the conduct of only one person. To the contrary, two or more factors, acts, omissions, or elements, or the conduct of two or more persons may work concurrently as the efficient cause of an injury, and in such a case, each of the participating acts, factors, omissions, conducts, or circumstances is regarded in law as a proximate cause. To give rise to liability, however, any such proximate cause must have consisted of negligent conduct.

Instruction No. 15, together with Instruction No. 32, which cautioned the jury to consider each instruction "in light of and in harmony with all the instructions" correctly indicated that numerous proximate causes may be found to be legal causes of a given injury. Thus Instruction No. 21 read in conjunction with the other instructions given does not dictate that there can only be one proximate cause of an accident but merely that Breitkreutz could recover the full amount of damages from Butrovich if Butrovich's negligence was the proximate cause of injury to Breitkreutz. Accordingly, we hold that the trial court did not err in giving Instruction No. 21.

## V

■■■ Appellant also alleges that as a whole the instructions were ambiguous, confusing, slanted, repetitious, and in many respects were erroneous and inconsistent with Alaska law. Breitkreutz never made this objection to the trial court. Though we have been flexible in other points raised for the first time on appeal in this case because some of the confusion may have been generated by the trial court itself, we cannot be as flexible on this point. Breitkreutz could have raised this point in superior court. His failure to do so precludes consideration by this court.[23]

## VI

Appellant's final point on appeal is that the trial court erred by not permitting defendant Baker to defend the Breitkreutz

21. *See* Meyst v. East Fifth Ave. Service, Inc., 401 P.2d 430 (Alaska 1965); Alaska Brick Co. v. McCoy, 400 P.2d 454 (Alaska 1965).

22. W. Prosser, Torts § 41 at 240 (4th ed. 1971); Restatement (Second) of Torts § 432 (1965); State v. Abbott, 498 P.2d 712, 726–727 (Alaska 1972).

23. Moran v. Holman, 501 P.2d 769, 770 n. 1 (Alaska 1972); Stauber v. Granger, 495 P.2d 67, 69 n. 2 (Alaska 1972); Rasco v. Moran, 475 P.2d 696, 698 (Alaska 1970); State v. 7.536 Acres, 431 P.2d 897, 900 (Alaska 1967); Watts v. Seward School Board, 423 P.2d 678 (Alaska 1967).

claim against him more actively than was permitted at the trial.

Baker appeared at trial prepared to defend the Breitkreutz claim. He did this even after he had entered into a pre-trial settlement agreement determining his pecuniary liability because as part of this settlement Baker was required to remain in the case as a defendant.

The trial court after hearing arguments on both sides determined that defendant could play only a limited role in the trial. Baker was limited in his voir dire of the jury and was not allowed to put on witnesses except in a limited capacity. The trial court instructed the jury that defendant Baker and plaintiff Breitkreutz had settled and for this reason no instructions would be permitted which would allow a finding of liability against Baker. Breitkreutz contends it was error to refuse to allow defendant Baker to actively defend his case.

At the time of the trial defendant Baker had no pecuniary interest in the outcome of the case. Baker had settled with the plaintiff and defendant Butrovich had dropped his cross-claim for damages against defendant Baker and waived his right to contribution from Baker. Baker's counsel made the following remarks in his opening statement indicating his view of his own role in the case.

> And as far as any interest in this proceeding financially and the outcome we have none, one way or the other and as such our participation will be very little I think.

The arguments Breitkreutz presented on appeal are novel but unsupported by any authority. The real disadvantage Breitkreutz feels she suffered was aptly stated in her reply brief, "[t]he true disadvantage to plaintiff in this case was the jury's knowledge that a settlement had been made with one of the tortfeasors." She contends that because of the ruling of the trial court

the jury came to look at defendant Baker as the party who caused most of the harm.

Appellant contends that Whittlesea v. Farmer [24] supports a position similar to hers. In *Whittlesea,* a similar arrangement was discussed in a concurring opinion. The concurring opinion noted that absent a showing of actual prejudice to the other defendant this was not reversible error. The concurring opinion went on to comment that the settling party "had a right to appear to protect whatever interests he thought might remain." [25] Another case cited by appellant to support her position is Pellett v. Sonotone Corporation.[26] In *Pellet,* a majority of the California Supreme Court gave their tacit approval of a similar arrangement *only when,*

> . . . the *court and the other parties were fully informed* of the nature and contents of the *agreement* prior to the second trial, and the court or jury could weigh the testimony of defendant Compton in the *light of the knowledge* that, since the agreement provided that a judgment could not be enforced against him, *he was not a witness who was adverse to the plaintiff.* (Emphasis added.) [27]

Justice Traynor dissenting in *Pellett* articulated some of the fears that the members of this court would have in adopting the argument of appellant.

> Plaintiff could therefore assume that he had a promising case with respect to the cause of action based on Compton's negligence and could expect to recover from Sonotone the damages caused by the negligence of its agent Compton. It is apparent that plaintiff was interested in maintaining the outward appearance of a law-suit against Compton in order to get Compton's testimony as a presumably hostile witness to prove Compton's negligence and to make Sonotone responsible for that negligence. Hence the agreement that in substance provided that

---

24. 86 Nev. 347, 469 P.2d 57 (1970).

25. *Id.* at 61.

26. 26 Cal.2d 705, 160 P.2d 783 (1945).

27. *Id.* at 788.

Compton's testimony would not make him responsible to plaintiff. This scheme made the action against Compton a collusive proceeding. It is clear that plaintiff expected by this agreement to secure favorable testimony from Compton in his action against Sonotone and that Compton's true performance was to be the giving of favorable testimony. Since the contract could not set forth such an immoral consideration it was predicated on the agreement that Compton was not guilty of culpable conduct.[28]

Since in this case we can find no interest in Baker in the outcome of the proceedings,[29] we hold the trial court did not err in limiting the participation of Baker or by informing the jury of the settlement between Baker and Breitkreutz.[30]

There was no error by the trial court herein and the judgment is hereby affirmed.

FITZGERALD, J., not participating.

28. *Id.* at 789.

29. There is some question in our minds as to whether the trial court should have allowed Baker to remain as a nominal defendant in this case. The question arises because Baker had no interest in the case and there would seem to be no "actual controversy" as to him. *See* Greater Anchorage Area Borough v. City of Anchorage, 504 P.2d 1027 (Alaska 1972); Jefferson v. Asplund, 458 P.2d 995 (Alaska 1969).

30. We feel that if the trial judge had not given the clarifying instruction regarding the settlement and the case went to the jury under the proposal of the appellant, it would have been error.