Janas Diane McLINN, by her next friend,
Charles L. McLinn, Appellant,

v.

KODIAK ELECTRIC ASSOCIATION, INC.,
a corporation, Appellee.

No. 2278.

Supreme Court of Alaska.

March 1, 1976.

Gary A. Zipkin of Ely, Guess & Rudd, Anchorage, for appellant.

Sanford M. Gibbs of Hagans, Smith & Brown, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

## OPINION

RABINOWITZ, Chief Justice.

On February 19, 1970, Kodiak Electric Association sent a crew of five employees to install a new pole at the site of existing utility lines in the vicinity of Mission Road and Urdahl Circle, in the city of Kodiak. In order to install the pole a boom truck was parked on Mission Road, thereby obstructing the northbound traffic lane. While cones were deployed around the truck, no flagmen were posted at either end of the obstruction. A driver approaching this obstruction from the south could not see oncoming southbound traffic due to a curve in the road.

At approximately 3:45 p. m., Janas McLinn, then three years old, approached the work site, entered the street, and began playing with the traffic cones. Three Kodiak Electric employees who were observing the progress of the work underway saw Janas as she entered the street and started to play with the cones. Janas was instructed by Kodiak's employees at least twice to stay away from the cones and out of the street. Janas ignored these instructions and continued playing. Subsequently a young boy of approximately ten years of age (Janas' brother) arrived, grasped a struggling Janas by the collar, and led her up Mission Road and onto Urdahl Circle.

At this point a truck with a boat trailer attached, driven by William Burke, appeared on Mission Road traveling north. Upon seeing the traffic cones, the obstruction, and the children standing in Urdahl Circle, Burke testified that he came to a complete stop[1] and then proceeded forward[2] at less than five miles per hour.[3]

---

[1]. There is some conflict in the testimony as to whether Burke actually came to a stop or merely slowed down. The most damaging testimony has him proceeding "very slowly" without coming to a stop. Burke is not a party to this action and whether he actually came to a complete stop or just slowed to a crawl is irrelevant to the questions we address in this appeal.

[2]. In a deposition Burke stated he had been waved on, after stopping, by a member of the work crew. In his testimony at trial, Burke stated that he really "couldn't recall" whether or not someone signalled him on. On cross-examination Burke testified he did not depend on anyone to guide him safely past the children; " . . . the children as far as I was concerned were out of my way."

[3]. Burke testified that he put his vehicle in low gear and that in low gear his truck could travel no faster than 5 miles per hour.

Burke further stated that at the time his truck passed the children they were standing still about ten feet from him. However, after the truck had passed, Janas McLinn slipped loose from her brother's grasp and stumbled onto the traveled portion of Mission Road and into the wheel of Burke's boat trailer.

As a result of Janas' injuries, suit was brought against Kodiak Electric on her behalf by her parents, but the trial resulted in a hung jury. A second trial resulted in a jury verdict in favor of defendant Kodiak Electric. After Janas' motions for a new trial were denied, this appeal followed. Before this court appellant Janas McLinn basically asserts two specifications of error. First, Janas argues that the superior court erred in instructing the jury that it was incumbent on her to prove that Kodiak Electric was in control of Mission Road at the time and place of the accident. Second, Janas asserts that it was error for the superior court to have refused to instruct the jury that a violation of 17 AAC 15.-130[4] is negligence per se.

From the outset the crux of Janas' case has consisted of attempts to establish the existence of a legal duty of care running from Kodiak Electric to her. To that end,

appellant has advanced, during the history of this controversy, several different theories of recovery. At the first trial Janas urged that Kodiak was responsible for her injuries under an attractive nuisance rationale. The theory was essentially one of premises liability. During the course of the second trial, Janas suggested other possible grounds for holding Kodiak liable for her injuries. More particularly, she alleged that the waving on of Burke, by an employee of Kodiak, constituted negligent conduct which proximately caused her injuries, and that the obstruction of Mission Road, in conjunction with failure to post flagmen to guide traffic around the obstruction, constituted the kind of unreasonable conduct that predicated an award of damages. Nonetheless, Janas' premises liability theory continued to resurface during the second trial. Janas argued that under the facts of this case Kodiak Electric owed her the same duty of care which a landowner or occupant owes to a trespasser under conventional notions of attractive nuisance.[5] It is fairly clear from the record that, despite counsel's vacillations, the trial judge virtually from the outset understood the case to be principally one of premises liability.

---

4. 17 AAC 15.130 requires in part that " . . . all utility installations on, over or under highway rights-of-way shall, as a minimum, meet the following basic code requirements: . . . (4) Traffic Control . . . (B) Uniform Manual on Traffic Control Devices for Streets and Highways, Bureau of Public Roads, 1966 . . . ." The Manual recommends the posting of flagmen under the circumstances which were present here.

5. In *Taylor v. Alaska Rivers Navigation Co.,* 391 P.2d 15, 17 (Alaska 1964), this court recognized as a possible basis for recovery the rule of premises liability set forth in Restatement of Torts § 339 (1934), with minor modifications. That rule provides as follows:

A possessor of land or a chattel is subject to liability for physical harm to chil-

dren trespassing thereon, caused by a condition of the land or chattel, if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know, and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the conditions or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

(d) the utility of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

In instruction 5 the superior court set forth the issues on which Janas McLinn had the burden of proof, as follows:

In this action, the plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:

(1) That the defendant was negligent;

(2) That the negligence of the defendant was a proximate cause of injury to the plaintiff;

(3) That the defendant was in control of Mission Street at the place of the occurrence. . . .[6]

Subparagraph 3 of instruction 5 was added by the superior court in response to Kodiak's objection to instruction 21, which articulated the elements of premises liability.[7] As we have mentioned in this appeal, Janas contends that the giving of instruction 5, as modified, was prejudicial error. At trial, Janas' counsel stated:

Your Honor, I wouldn't want an instruction that indicated to the jury that we had the burden of proving that Kodiak Electric Association had control of the street and that if we didn't prove that we lost the case. .

*The Court*: Well, the burden of proof instruction doesn't say that. The burden of proof instruction is intended to be understood alternatively anyway and it is just if this issue is important to you, this party has the burden of proving it.

Later, after reviewing the proposed instructions, Janas' counsel objected to the use of the conjunctive "and" between the three clauses of instruction 5, on the basis that under some of the theories of liability advanced it would not be necessary for her to prove that Kodiak Electric controlled the street in question. Upon the trial court's agreeing to delete "and", counsel for Janas further requested that the third phrase of instruction 5 be cross-referenced to instruction 21, the possessor of land instruction: ". . . I want it in a position where it doesn't indicate to the jury I have to prove it rather than it indicates I have to prove it in connection with that problem." The trial judge then responded: "Well, . . . I think that's clear to

---

6. The balance of instruction 5 reads as follows:

By a preponderance of the evidence is meant such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth. In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue preponderates, then your finding upon that issue must be against the party who had the burden of proving it.

In determining whether an issue has been proved by a preponderance of the evidence, you should consider all of the evidence bearing upon that issue regardless of who produced it.

7. Instruction 21 informed the jury that:

One in control of a street is subject to liability for physical harm to children coming thereon caused by traffic on the street if

(a) the place where the traffic exists is one upon which the party in control knows or has reason to know that children are likely to come, and

(b) the party in control knows or has reason to know of the traffic and realizes or

should realize it will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the traffic or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the burden of eliminating the danger is slight as compared with the risk to children involved, and

(e) the party in control of the street fails to exercise ordinary care to eliminate the danger or otherwise to protect the children. Kodiak objected to this instruction on the grounds that there was no evidence whatever that it was in "possession" of the area within the meaning of Restatement of Torts § 339 (1934) and that as a matter of law Kodiak could not have been a possessor in the sense of incurring affirmative duties of a land possessor towards trespassers. The superior court responded by imposing upon Janas the additional burden in instruction 5 of proving Kodiak was in control of Mission Street at the time of the accident.

[sic] the other instruction." Janas' counsel asked if there would be any objection to his explaining instruction 5 to the jury and the court replied, "No, you can certainly talk about any of these instructions. . . . and if you want to point out to the jury you have a theory other than the theory encompassed in 21 that is independent of it and totally unrelated to it, you certainly may say that as long as you don't tell the jury that it's the burden of the defendant, to prove some other theory."

 The gist of Janas' argument on this point is that instruction 5 precluded recovery against Kodiak under a theory of ordinary negligence and had the effect of limiting the jury to consideration of only the single theory of premises liability. In other words, the superior court's ruling on instruction 5 was tantamount to a ruling that, as a matter of law, Kodiak Electric owed no duty toward Janas McLinn other than that which might spring from Kodiak Electric's control of the street at the place where the accident occurred. Janas suggests three alternative reasons why the jury should have received an ordinary negligence instruction requiring her to prove only negligence and proximate cause. First, appellant contends that, as a matter of law, one who places an obstruction on a public highway, even though without negligence, is under an affirmative duty to use ordinary care under the circumstances to prevent injury to others resulting from the dangerous situation created. Under this theory there is no need to prove control of the highway. Second, appellant argues that William Burke's deposition testimony, that a Kodiak employee waved him through the area, demonstrates an assumption of a duty on Kodiak's part to exercise reasonable care to prevent injury to her. Under this second "negligent signal" theo-

ry, if the jury accepted Burke's deposition testimony, they would necessarily have to conclude that Kodiak assumed control through its employee.[8] Thirdly, Janas argues that Kodiak was under a statutory duty to assume control of the area by the posting of flagmen pursuant to the Manual on Uniform Traffic Control Devices for Streets and Highways.[9] Under this theory Kodiak was vested with control of the street, as a matter of law, and the remaining burden on Janas would be to prove ordinary negligence under the circumstances.

Comment on Janas' third altrnative theory of ordinary negligence will be deferred to a later section of this opinion. As to Janas' first two arguments relating to her ordinary negligence contentions, we comment in no greater depth than to note that they appear to be sound negligence theories. We find compelling reasons for concluding that, even if the evidence justifies instructing the jury under an ordinary negligence theory, the giving of instruction 5 in the circumstances of this case was not error.

Instruction 5 did not prohibit the jury from considering ordinary negligence theories of liability. Instruction 5 was a burden of proof instruction and did not preclude recovery under an ordinary negligence theory if Janas did not prove control, by Kodiak, of the street. The instruction placed on Janas the burden of proving negligence, proximate cause, and control. Which factors would be relevant was dependent upon the substantive law theory the jury employed. Under instruction 21, control would necessarily have to be proved to predicate liability. Under theories of ordinary negligence, control need not be proved. We note that the superior court judge specifically deleted the conjunctive

---

8. Under Section 323 of the Restatement (Second) of Torts, it was incumbent upon Janas to show that the guidance of Burke's vehicle by a Kodiak employee was a service rendered "to" (or for the benefit of) her. Evidence going to this prerequisite of liability under Section 323 was lacking. Therefore, she was

not entitled to an instruction based on this theory.

9. *Compare* note 4 *supra,* with *Ferrell v. Baxter,* 484 P.2d 250, 264 (Alaska 1971); *see* Restatement (Second) of Torts § 288B (1965).

"and" from instruction 5 to allow the jury to apply the appropriate burdens of proof.

Given that instruction 5 does not preclude consideration of ordinary negligence theories by the jury, the question arises whether it was open to the jury under the superior court's instructions to find that Janas had established Kodiak's liability by proof of only "ordinary" negligence. Instruction 6 places the burden on Janas to establish by a preponderance of the evidence that an act or omission of Kodiak employees was a proximate cause of the injuries sustained by her.[10] This instruction contains no language relating to the subject of "control" but was rather a more specific, ordinary negligence burden of proof instruction. Instruction 20 defined negligence as the failure on the part of a reasonably prudent person to use ordinary care under the circumstances in the management of one's person or property, or of agencies under one's control.[11] Instruction 24 then informed the jury that any increase in foreseeable danger requires increased care on the part of a reasonably prudent person.[12] Instruction 25 defined proximate cause as an act or omission which plays a substantial part in bringing about, or actually causing, the injury or damage.[13]

Our study of these instructions has led us to the conclusion that the jury was in fact given instructions covering ordinary negligence under which Janas was only required to prove negligence and proximate cause. Under the instructions we have alluded to, it was open to the jury to find Kodiak liable on negligence theories other than the "premises control" theory of liability. For example, the jury could have found that, under instruction 24, the presence of the boom truck on Mission Road increased the foreseeable danger of accidents in the area which required increased care on the part of Kodiak. They could then further conclude, under instruction 20, that the failure of Kodiak employees to

---

10. Instruction 6 provided:
Since a corporation can act only through its officers, or employees, or other agents, the burden is on the plaintiff to establish, by a preponderance of the evidence in the case, that the negligence of one or more officers, or employees, or other agents, of the defendant was a proximate cause of any injuries and consequent damages sustained by the plaintiff.
Any negligent act or omission of an officer, or employee, or other agent, of a corporation, in the performance of his duties, is held in law to be the negligence of the corporation.

11. Instruction 20 provided:
Negligence is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, when prompted by considerations which ordinarily regulate the conduct of human affairs. It is, in other words, the failure to use ordinary care under the circumstances in the management of one's person or property, or of agencies under one's control.

12. Instruction 24 provides:
Because the amount of care exercised by a reasonably prudent person varies in proportion to the danger known to be involved in what is being done, it follows that the

amount of caution required, in the use of ordinary care, will vary with the nature of what is being done, and all the surrounding circumstances shown by the evidence in the case. To put it another way, any increase in forseeable [sic] danger requires increased care.

13. Instruction 25 provided:
Any injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case, that the act or omission played a substantial part in bringing about or actually causing the injury or damage; and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.
Instruction 26 informed the jury that many different acts or omissions may operate independently or together to cause an injury, and any of these may be a proximate cause. Instruction 26 reads in full as follows:
This does not mean that the law recognizes only one proximate cause of an injury or damage, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons, may operate at the same time, either independently or together, to cause injury or damage; and in such a case, each may be a proximate cause.

make certain that Janas was out of harm's way was unreasonable, and under instruction 25 that this failure to use reasonable care was a proximate cause of Janas' injuries. Thus, under the court's instructions, it would be irrelevant whether Janas proved control. The fact is the jury could have concluded Kodiak was negligent in the most conventional sense, but they did not. The superior court's instructions appear to adequately cover the theories of negligence Janas claims to have advanced as alternative predicates to liability. Even had Janas specifically requested legally accurate additional instructions to cover the theories of liability she claims the jury was precluded from considering under instruction 5, we question whether failure to give such additional instruction would have been error in light of the instructions actually given.[14] The fact that Janas did not present to the trial judge an alternative to the instruction to which she objects here buttresses our conclusion that the giving of instruction 5 in the factual context of the case at bar was not error.

Janas' objection to instruction 5 was that it precluded consideration of ordinary negligence as a potential basis upon which Kodiak could be found liable. To recapitulate the circumstances surrounding the giving of instruction 5, the record shows that this instruction was modified at least once at the insistence of Janas. In our view, Janas' objection to the conjunctive "and" in an earlier version of instruction 5 is highly significant. Her objection to the earlier version was made on the basis that under some theories of liability it would not be necessary for her to prove the existence of Kodiak's "control" of the street in question. In ruling on this objection, the superior court deleted the conjunctive "and" from instruction 5. Janas then requested a cross-referencing of the "control" burden portion of instruction 5 to the premises liability theory explained in instruction 21. Upon the court's assertion that such cross-reference was clear in the instructions as a whole, Janas' counsel then stated, "I don't have anything further, Your Honor."

When counsel asked if he might explain instruction 5 to the jury, the court responded, ". . . you can certainly talk about any of these instructions. . . . And if you want to point out to the jury you have a theory other than the theory encompassed in 21. . . . you certainly may say that . . . ." The court's readiness to allow Janas' counsel to advance alternative theories in argument persuades us that the court would have been as ready to allow those theories to be further explained and delineated in a technically proper instruction.[15] Examination

14. See *City of Fairbanks v. Nesbett*, 432 P.2d 607, 612 (Alaska 1967); *Veal v. Newlin, Inc.*, 367 P.2d 155, 156 (Alaska 1961).

15. Alaska Rule of Civil Procedure 51(a) provides:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity

shall be given to make the objection out of the hearing of the jury, by excusing the jury or hearing objections in chambers.

As we said in *Saxton v. Harris*, 395 P.2d 71, 73 (Alaska 1964) (footnote omitted), "[t]he purpose of this rule is to enable the trial judge to avoid error by affording him an opportunity to correct his charge before it goes to the jury. The dictates of the rule are satisfied only if the judge is clearly made aware of the alleged error in or omission from the instructions. Counsel's objections must be specific enough to clearly bring into focus the precise nature of the asserted error." We are persuaded that the objections of Janas' counsel did not come within the spirit of Rule 51. *Compare Pepsi Cola Bottling Co. v. Superior Burner Serv. Co.*, 427 P.2d 833, 837 (Alaska 1967), and *Reader v. Ghemm Co.*, 490 P.2d 1200, 1202 n. 1 (Alaska 1971). In these cases we held that a trial court's failure to

of the record discloses that in his final argument to the jury Janas' counsel did in fact argue theories of liability other than the control-premises theory.[16]

■■ Janas' second specification of error concerns the superior court's failure to instruct the jury that Kodiak's failure to follow procedures required by the Uniform Manual on Traffic Control Devices for Streets and Highways, specifically its failure to post flagmen about its work, was negligence per se. Had the jury received such an instruction, their deliberations would have been limited to determining whether there was a causal relationship between the failure to post a flagman and Janas' injuries.[17] According to Prosser,

[o]nce the statute is determined to be applicable—which is to say, once it is in-

terpreted as designed to protect the class of persons in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation—the great majority of the courts hold that an unexcused violation is conclusive on the issue of negligence, and that the court must so direct the jury.[18]

Other jurisdictions vary considerably in the effect given to the breach of a traffic law.[19] In Alaska, the seminal case concerning violation of law and its effect on a jury's consideration of negligence is *Ferrell v. Baxter*.[20] In that case we adopted the rules set forth in the Restatement (Second) of Torts §§ 286, 288A and 288B (1965)[21] as guidelines for trial courts on

---

give a charge may not be excused by technical defects in a requested instruction if the requested instruction sufficiently indicates to the judge a proper area of concern. We do not hold here that the failure of counsel to offer a technically proper instruction is by itself fatal to counsel's argument on appeal. Rather, we view the failure to offer an additional clarifying instruction free of technical defects as a factor in assessing prejudice to appellant in light of the other instructions given. As we have indicated, *supra*, the instructions given allowed the jury to consider an ordinary negligence theory. In light of the fact that the jury could consider such a theory, we hardly regard as prejudicial error the failure to post "neon signs" which, as proposed, were defective.

16. (Under appellant's single specification of error attacking instruction 5, the further argument is advanced that Kodiak was in possession of the Mission Road site as a matter of law. Section 328E of the Restatement (Second) of Torts defines a "possession" of land in terms of occupation and control; it does not require ownership interest as a prerequisite to liability. Kodiak claims that there was no evidence that it made any attempt to control both sides of the Mission Road. We agree with Kodiak's position and conclude that Janas was not entitled to a ruling that as a matter of law Kodiak was in control of the site of the accident. The Comment to Section 328E of the Restatement makes clear that "possession" as a predicate to premises liability is a factual issue.

17. *See* W. Prosser, Handbook of the Law of Torts (4th ed. 1971) § 201, at pp. 200–03 [hereinafter cited as Prosser].

18. Prosser, *supra* note 17, § 36, at 200 (footnote omitted).

19. *See generally* 2 F. Harper and F. James, The Law of Torts § 17.6 (1956).

20. 484 P.2d 250 (Alaska 1971).

21. Restatement (Second) of Torts § 286 (1965) provides:

The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

Restatement (Second) of Torts § 288A (1965) provides:

(1) An excused violation of a legislative enactment or an administrative regulation is not negligence.

(2) Unless the enactment or regulation is construed not to permit such excuse, its violation is excused when

(a) the violation is reasonable because of the actor's incapacity;

(b) he neither knows nor should know of the occasion for compliance;

(c) he is unable after reasonable diligence or care to comply;

(d) he is confronted by an emergency not due to his own misconduct;

the proper use of traffic statutes, regulations, and ordinances in negligence cases. Section 286 provides that a trial court may adopt an administrative regulation as the standard of conduct of a reasonable man when certain prerequisites are met. Section 288B(2) provides that when a regulation is not adopted as the legal standard of care, an unexcused violation may nonetheless be relevant evidence bearing on the issue of negligence. In the case at bar the superior court did not adopt the administrative regulation in question as defining the standard of care. Rather, the court treated the regulation as relevant evidence bearing on the issue of negligence. We are now called upon to determine whether the superior court abused its discretion in determining that a violation of 17 AAC § 15.130 was only evidence of negligence and not negligence per se.[22]

We begin this inquiry by noting that nothing in *Ferrell* distinguishes between rules administratively adopted and rules which are law because they themselves were enacted by the legislature.[23] The point of *Ferrell* is not that one type of law be given greater effect than another. Rather, it is that from time to time the state will articulate ". . . a policy

that a certain class of individual be protected from a certain type of harm."[24] The *Ferrell* case itself concerned not a legislatively enacted law but rather a regulation such as the one we are concerned with here. Regarding the effect to be ascribed to that regulation in *Ferrell*, we said: "By enacting the regulation pursuant to statutory authority, the Department of Public Safety has implicitly indicated that no reasonable person would [do the prohibited act." [25] Subsequently, in *Breitkreutz v. Baker,* 514 P.2d 17, 20–24 (Alaska 1973), we elaborated on the criteria a trial judge should consider in determining what effect to give to a violation of statute or administrative rule. In that case we approved of a decision of the United States Court of Appeals for the Sixth Circuit[26] where the court stated:

. . . when a statute expresses a rule of conduct in general or abstract terms negligence *per se* has no application and . . . in such a case liability is determined by the usual test of reasonable care.[27]

Applying this standard in *Breitkreutz* to an administrative regulation directing drivers to not drive at a speed "greater than is

---

(e) compliance would involve a greater risk of harm to the actor or to others.
Restatement (Second) of Torts § 288B (1965) provides:
(1) The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself.
(2) The unexcused violation of an enactment or regulation which is not so adopted may be relevant evidence bearing on the issue of negligent conduct.

22. Instruction 24A provided:
There was in force in the State of Alaska at the time of the occurrence in question a certain regulation (17 Alaska Administrative Code, Sec. 15.130) which provided that:
'(a) except where a higher degree of protection is required by the Department or by law, or orders of public authority having jurisdiction over the utility, all utility installations on, over or under highway rights of way shall, as a minimum, meet the following basic code requirements;

. . . (4) traffic control
(B) Uniform Manual on Traffic Control Devices for Streets and Highways, Bureau of Public Roads, 1961.'
If you decide that a party violated the regulation in question by failing to comply with the recommendations set out in the Uniform Manual on Traffic Control Devices for Streets and Highways, Bureau of Public Roads, 1961, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the party was negligent before and at the time of the occurrence.

23. *See e. g., Beitkreutz v. Baker,* 514 P.2d 17, 20 (Alaska 1973).

24. *Ferrell v. Baxter,* 484 P.2d 250, 261 (Alaska 1971).

25. *Id.*

26. *Lester v. John R. Jurgensen Co.,* 400 F.2d 393 (6th Cir. 1968).

27. *Id.* at 396.

reasonable and prudent", we approved of the trial judge's refusal to direct a verdict for plaintiff, on the ground that the jury must still determine what a reasonable and prudent speed would be under the circumstances.[28]

In the instant case we hold that the trial judge did not abuse his discretion in failing to instruct that a violation of 17 AAC 15.130 was negligence per se.

*Ferrell* did recognize that certain circumstances might arise which would justify a decision not to adopt a regulatory standard, for example, when " . . . the law is somewhat obscure and unknown to the motoring public generally. . . . "[29] One form of ignorance is well established as an excuse in these statutory violation cases. Where a party's infraction is due to innocent ignorance of the operative facts which make the statute or regulation applicable, courts have held that the jury must be given the opportunity to pass on the validity of the alleged excuse.[30]

We think the reasoning of these cases are applicable to the particular facts of the case at bar. The superior court was of the view that a reasonably prudent person, contemplating the installation of a new pole at the site of existing utility lines on Mission Road, would not have been aware of the applicability of 17 AAC 15.130. This conclusion flowed from the ambiguous status of Mission Road at the time of the accident[31] and the imprecise terms of the coverage of 17 AAC 15.130. In light of these factors, we are of the view that a negligence per se instruction was not warranted. Thus, we are led to the conclusion that no abuse of discretion has been shown. Appellant Janas McLinn received an eminently fair negligence instruction which emphasized the failure of Kodiak to post a flagman across Mission Road from Urdahl Circle.

The judgment of the superior court is affirmed.

BURKE, J., not participating.

28. In *Breitkreutz*, 514 P.2d at 23, we quoted with approval the explanation of the Supreme Court of Ohio in *Eisenhuth v. Moneyhon*, 161 Ohio St. 367, 119 N.E.2d 440 (1954), regarding when a standard of care fixed by the legislature is to be regarded as final and conclusive. That explanation is sufficiently clarifying to bear repeating here:

> In other words, if a positive and definite standard of care has been established by legislative enactment whereby a jury may determine whether there has been a violation thereof by finding a single issue of fact, a violation is negligence per se; but where the jury must determine the negligence or lack of negligence of a party charged with the violation of a rule of conduct fixed by legislative enactment from a consideration and evaluation of multiple facts and circumstances by the process of applying, as the standard of care, the conduct of a reasonable prudent person, negligence per se is not involved.

119 N.E.2d at 443–44.

29. *Ferrell v. Baxter*, 484 P.2d 250, 264 n. 24 (Alaska 1971).

30. *Johnson v. Chicago & Northwestern Ry. Co.*, 71 S.D. 132, 22 N.W.2d 725 (1946) ; *see*

also *Hullander v. McIntyre*, 78 S.D. 453, 104 N.W.2d 40 (1960) ; *McEachen v. Richmond*, 150 Cal.App.2d 546, 310 P.2d 122 (1957) ; *Mitchell v. Emblade*, 80 Ariz. 398, 298 P.2d 1034 (1956) ; *Wood v. Chicago, M., St. P. and Pac. R. R. Co.*, 45 Wash.2d 601, 277 P. 2d 345 (1954).

31. For 17 AAC § 15.130 to be applicable, Mission Road would have had to be a state highway. In 1965, the State of Alaska, in a letter written by Crosby Stein, district highway engineer, to the City Manager of Kodiak, avowed that maintenance of Mission Road would be discontinued and indicated that the road would be dropped from the state highway system. After that period of time, the city of Kodiak continuously maintained the street. Although Mission Road was not formally withdrawn from the state highway system, the 1966 annual traffic report for the State of Alaska considered Mission Road to be a city route and no longer available for federal aid in the state highway program. On July 8, 1970, Mission Road was formally deleted from the state highway system and transferred to the city of Kodiak as a city street.